(100 App. Div. 476)

### QUIGLEY v. NAUGHTON et al.

(Supreme Court, Appellate Division, First Department. January 6, 1905.)

1. APPEAL—EVIDENCE—REVIEW.

> An appellate court, in reviewing evidence on which a verdict is based, is bound to recognize the existence of certain facts as controlled by physical laws, and to disregard evidence in conflict therewith.

2. SAME—INJURIES.

> Evidence as to the circumstances surrounding plaintiff's injuries, alleged to have been caused by his being struck by a rock thrown by a blast in an excavation in a street, *held* so improbable as to render it insufficient to sustain a verdict in his favor.

Appeal from Trial Term, New York County.

Action by James E. Quigley against Bernard Naughton and Daniel F. McMahon, impleaded with the city of New York and the Third Avenue Railroad Company. From a judgment in favor of plaintiff against Naughton and McMahon, and from an order denying a motion for a new trial, they appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

George Gordon Battle, for appellants.
Albert I. Sire, for respondent.

McLAUGHLIN, J. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff on the 4th of November, 1899, while driving on Amsterdam avenue, at or near 176th street, in the city of New York. The allegation of the complaint upon which the right to recover was predicated was to the effect that at the time and place named the plaintiff was struck on the head by a piece of rock thrown by a blast put off in an excavation which was being made in Amsterdam avenue by the appellants. The action was originally brought against the city of New York, the Third Avenue Railroad Company, and the appellants, but upon the first trial the complaint was dismissed as to the city of New York and the Third

Avenue Railroad Company, and the jury disagreed as to Naughton and McMahon. On the second trial the plaintiff had a verdict for $5,000 against Naughton and McMahon, and from the judgment entered thereon this appeal is taken.

I think this judgment should be reversed. The testimony of the plaintiff as to the way in which he was injured is so incredible and contrary to reason that the court cannot permit the verdict, which has nothing else to support it, except a slight corroboration by one other witness, to stand. He testified, in effect, that between 4 and 5 o'clock in the afternoon of November 4, 1899, he was driving a horse attached to a road cart on Amsterdam avenue, and when he reached a point near the intersection of 176th street he was struck on the head by a rock and stunned; that he lost control of the horse, by reason of which one wheel of the cart went into an excavation some two feet deep, and he was thrown out; that he struck on his head and shoulders; and then (to use his own language):

"After I got in the excavation, I still held the lines in my left hand, and I grabbed hold of the shaft with my right hand, and the horse drew me out, more by the wagon than he did by the reins, and I got back onto my cart and started right down the street. * * * After I got out of the excavation, I remember going south on the street. How far I went I have no recollection. * * * The last thing I remember, the horse was on the vacant lot. * * * I did not have power to drive the horse, but I was riding on the cart, trying to gain my feet. The last I remember I was riding on the shaft, having hold of the seat and riding between the shaft and the cross-bar on the cart, riding on the shaft between the shaft and the cross-bar and having hold of the seat. This cart did not have a dashboard."

He was found in a vacant lot at 172d street and Amsterdam avenue, between 6 and 7 o'clock that evening, lying at the foot of a dump some 30 feet in height, among some rocks, in a semiconscious condition, and his horse and cart were about 200 feet from him, in the same lot, wedged in between two trees. He was taken to a hospital, and it was there discovered that he had a depressed fracture of the skull about the size of a half dollar, and that a number of the fragments of bone were driven into the brain, and its outer covering torn; that through this fracture there was a protrusion of the brain about the size of a hen's egg. No explanation was given or suggested as to how the plaintiff came to be at the foot of the dump, or the horse and cart in the place where they were found. The cart was uninjured, except that one wheel, or the axle, or both, were slightly sprung. Not a single witness was produced to corroborate the plaintiff as to his being injured at the time and place named by him, except the witness Synnett; and his testimony, taking his own words, shows that little or no reliance can be placed upon it. He testified that he met the plaintiff on Amsterdam avenue, near 176th street, on the 4th of November, 1899, and (to use his own language) he said:

"After he passed me, I walked may be thirty feet. * * * Then I heard this rumbling noise behind me, and I turned around, and the men then were still in the ditch. When I turned around, being attracted by this rumbling noise, I saw this man Quigley, who had just passed me, down in the ditch, with one hand holding on the shaft or some part of the wagon, being dragged out. That was the first I saw him after I turned around. He climbed up onto some part of the wagon and went on and I went on. I never thought or heard of it again until four years after. I did not think any more about it.

This matter was all brought back to me on 125th street. I met a subpœna server over there, * * * and I said, * * * 'What are you doing up here?' and he told me he was looking up witnesses for a case that happened upon Amsterdam avenue. * * * I told him I saw it. * * * When I told him that I had seen this accident, he simply said that he was hunting up witnesses in an accident case that happened up on Amsterdam avenue."

This witness was unable to tell the day when this conversation took place, notwithstanding the fact that he was able to state that it was on the 4th of November, 1899, at a quarter before 5 o'clock in the afternoon, that the plaintiff was thrown into the excavation.

A court, in reviewing evidence upon which a verdict is based, is bound to exercise its intelligence, and in doing so must recognize the existence of certain facts as controlled by physical laws. It cannot permit the finding of a jury to change such facts, because to do so would, in effect, destroy the intelligence of the court. Matter of Harriot, 145 N. Y. 540, 40 N. E. 246; Elwood v. The Western Union Tel. Co., 45 N. Y. 549, 6 Am. Rep. 140; Warner v. Western Transportation Co., 5 Rob. 490; Colvin v. Brooklyn Heights R. R. Co., 32 App. Div. 76, 52 N. Y. Supp. 698. It may be possible that a person injured as seriously as the plaintiff was could do what he says he did—that is, be thrown from his cart into a trench two feet deep, retain the lines of the horse which he was driving in one hand, and grab hold of the cart with the other, be dragged out of the trench, and then get up onto the cross-bar, and there sit until he had been carried several blocks, retaining his consciousness in the meantime, and then be deposited in some way at the foot of the dump 30 feet in height. Whether it be possible or not, it is so improbable that justice demands the matter should be submitted to another jury for its determination.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.