[Civ. No. 3050.  Second Appellate District, Division Two.—March
10, 1920.]

## E. E. AUSTIN, Respondent, v. ALICE M. NEWTON, Appellant.

[1] EVIDENCE — TESTIMONY INHERENTLY IMPOSSIBLE — REVERSAL OF
JUDGMENT.—When the undisputed circumstances show that the
story told by a litigant and his witnesses cannot by any possibil-
ity be true, or when their testimony is inherently impossible, the
appellate court should not hesitate to reverse the judgment, to
the end that the cause again may be submitted to the determina-
tion of a jury or trial judge.

[2] ID.—APPLICATION OF COMMON KNOWLEDGE OF PHYSICAL LAWS TO
ADMITTED FACTS—IMPROBABILITY OF PLAINTIFF'S STORY.—It is the
duty of an appellate court to exercise great care and caution in
applying the test of common sense and common knowledge of
physical laws to a given state of facts, and unless it can say that,
under the undisputed physical facts, the accident could not pos-
sibly have been due to defendant's negligence as alleged in the
complaint, it must affirm the judgment. It is not sufficient that
the story told by plaintiff and his witnesses may be improbable.

[3] ID.—POSITION OF PLAINTIFF AFTER ACCIDENT — CONSISTENCY OF
PLAINTIFF'S VERSION WITH PHYSICAL LAWS.—In this action to
recover damages for personal injuries sustained by plaintiff by
reason of the fact that the motorcycle, driven by his son, on
which he was riding was crowded off the highway, due to the
alleged negligence of the defendant in the operation of her auto-
mobile, it could not be held as a matter of law or a demonstra-
tion of physics that plaintiff and his son could not possibly have
been thrown the distance they were if the motorcycle was going
at the rate of speed described by plaintiff's witnesses, but that

such an eventuality was possible if it was going at the higher rate of speed testified to by defendant's witnesses.

[4] ID.—CONSISTENCY OF TESTIMONY WITH PHYSICAL FACTS—REASONABLENESS OF PLAINTIFF'S VERSION—FINDING OF TRIAL COURT CONCLUSIVE.—To entitle the plaintiff in a personal injury case to recover, it is not essential that the court can see that every detail of the accident, as testified to by the plaintiff and his witnesses, is consistent with the admitted physical facts and the laws of science; and if, notwithstanding the admitted physical circumstances, the accident could have been caused by the negligence of the defendant as charged in the complaint, the reasonableness of plaintiff's version of the accident is a question of fact for the trial court, and its finding thereon is conclusive on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leon F. Moss for Appellant.

Kendrick & Ardis and Dailey S. Stafford for Respondent.

FINLAYSON, P. J.—This action was brought to recover damages for personal injuries alleged to have been sustained by plaintiff while riding on a motorcycle, driven by his son, on Citrus Avenue, near the town of Covina, in Los Angeles County. Plaintiff recovered judgment. Defendant appeals, contending that plaintiff's version of the accident, as described by himself and his witnesses, is so irreconcilable with the admitted physical facts that it is inherently impossible that plaintiff could have been injured in the manner that he and his witnesses described.

Citrus Avenue runs northerly and southerly. It is intersected by Ciennaga Avenue, a highway running at a right angle with the direction of Citrus Avenue, and which, though entering Citrus Avenue from the east, does not extend beyond the westerly line of that highway. Citrus Avenue, at this locality, is bordered on the west by an orange orchard. Between the orchard and the macadamized pavement of Citrus Avenue, at the intersection of the latter with Ciennaga Avenue, and for a short distance north and south of Ciennaga Avenue, there is a board wall running parallel with and west of Citrus Avenue. This wall has

a dirt top, about two feet wide. Between the board wall and the hard macadamized pavement of Citrus Avenue there is a ditch, about eight feet wide, filled with soft dirt and stones. The top of the board wall is about two and a half feet above the ground on either side.

Plaintiff's theory of the accident, as disclosed by his complaint, is substantially as follows: While plaintiff was riding a motorcycle on the right-hand side of Citrus Avenue, near where Ciennaga Avenue joins it, defendant so carelessly and negligently ran and propelled her automobile that the driver of the motorcycle, plaintiff's son, in order to escape being run over and crushed by the automobile, was compelled to run his motorcycle into the ditch, whereby plaintiff's leg was broken, and the only way that plaintiff could have escaped being crushed by the automobile was for the driver of the motorcycle to run it into the ditch.

Plaintiff and his witnesses, testifying to how the accident happened, described it substantially as follows: Plaintiff was riding on a tandem seat on the motorcycle, behind his son, who was driving. The motorcycle was proceeding southerly on Citrus Avenue. At some distance north of the inter-section of Ciennaga Avenue with Citrus Avenue the motorcycle was traveling at about twenty-five miles an hour. It slowed down to about twenty miles an hour as it approached the crossing. Defendant's automobile, traveling westerly on Ciennaga Avenue, approached the intersection. When defendant's automobile started to make the turn into Citrus Avenue, the motorcycle, proceeding southerly along Citrus Avenue, was southwest of the automobile and distant therefrom about twenty feet. The automobile did not make a "square turn," but "cut the corner," traveled in a south-westerly direction from the north side of Ciennaga Avenue, caught up with the motorcycle, while the latter was traveling southerly on Citrus Avenue, and crowded it off the macadamized pavement into the ditch immediately west of Citrus Avenue. The automobile continued on its course along Citrus Avenue, traveling in a southerly direction. Plaintiff testified: "After we saw the automobile it turned around the corner southwest and came clear across Citrus Avenue, there taking the right of way from us and coming up beside us, and then we went into the ditch. During the time when the automobile was making the turn into Citrus Avenue,

our motorcycle was just a foot or two inside the macadam, keeping well on the macadam.'' Plaintiff testified that while the motorcycle was traversing the ditch, and before it came to a stop, he slid off behind the motorcycle, and that as he slid off he was dragged by and on his feet. It was conceded by all the witnesses that he was thrown over the board wall into the orchard immediately west of the wall. He lay there with his head toward the wall, about five feet distant therefrom, his body extending toward the west.

In describing how his leg was broken, plaintiff testified: ''My leg was broken just below the knee by striking the board wall. . . . The ditch is narrow, and we had a rough journey through there. We went back and forth. [That is, from side to side.] We did not go straight, of course. Probably we might have went up against the bank of the curb [meaning the board wall] a time or two after we struck the wall.'' Asked how far he traveled along the ditch before he slid off the motorcycle, plaintiff replied: ''I suppose we went sixty or seventy-five feet. It seemed to me we did, but it was all done so quickly that I couldn't tell exactly. . . . It [the motorcycle] came to a stop before it was overturned. I don't know what overturned it. I was off the motorcycle and on the ground before the motorcycle stopped. . . . I don't know what particular thing made me get off. I know the ditch was rough, and there were stones in the ditch and holes washed out, and I stayed on it as long as I could. . . . I simply slipped off. . . . I slid off behind. . . . As near as I can remember, it didn't seem but a short distance after I struck, after I went into the gutter, that I went over the wall—it didn't seem but a short time, and a very short distance. . . . I let go and went off the motorcycle and I don't know what caused me to do it, but I went off, and as near as I can remember I drug by on my feet as I slipped off the motorcycle, and I fell to my right on to the dirt bank, and went over the bank, part way down into the orange orchard, and I lay there with my head partly toward the bank, partly up the bank, and my feet were down toward the orange orchard.''

Plaintiff and his son both testified that when the motorcycle left the macadamized pavement and went into the ditch it was traveling at a speed not to exceed fifteen miles

an hour. Both landed in the orchard and were rendered unconscious. The complaint alleges that plaintiff was rendered unconscious by being "violently thrown from said motorcycle." Plaintiff testified that he "went off" the motorcycle before it stopped, but that he did not know what it was that caused him to be thrown off. Louis Clark, a witness for plaintiff, testified that father and son "went off" the motorcycle at practically the same instant, or, as he put it, the "same second."

Plaintiff's right leg was broken just below the knee joint. The blow that caused the fracture was so violent that it fractured the bone clear through, breaking it into two parts. The leg was lacerated and torn on the inside. There was no bruise or contusion on the outside of the leg. The doctor whom plaintiff employed to set the broken bone testified that the leg appeared to him as though the injury was due to a blow struck on the *inside* of the leg, inside and below the knee. "The force that broke the leg was applied on the inside of the limb just below the knee joint."

According to defendant's version of the accident, the motorcycle, traveling at a great speed—sixty miles an hour, according to one witness—overtook defendant's automobile after she had made the turn into Citrus Avenue, and, endeavoring to pass it on the wrong side, i. e., on the right-hand instead of the left-hand side, went so close to the westerly edge of the macadamized pavement that it ran into the soft dirt in the ditch, and thus its momentum was arrested so suddenly that plaintiff and his son were pitched off the motorcycle and thrown over the board wall into the orange orchard west of Citrus Avenue.

[1] Undoubtedly an appellate court, in reviewing the evidence, is bound to exercise its intelligence, and in doing so must recognize that certain facts are controlled by immutable physical laws. It cannot permit the verdict of a jury to change such facts, because, as said in *Quigley* v. *Naughton,* 100 App. Div. 476, [91 N. Y. Supp. 491], to do so would, in effect, destroy the intelligence of the court. And when the undisputed circumstances show that the story told by litigant and his witnesses cannot by any possibility be true, or when their testimony is inherently impossible, the appellate court should not hesitate to reverse the judgment,

46 Cal. App.—32

to the end that the cause again may be submitted to the determination of a jury or trial judge.

[2]  On the other hand, as an appellate court, it is our bounden duty to exercise great care and caution in applying the tests of common sense and common knowledge of physical laws to a given state of facts.  Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable.  For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal upon the ground that the verdict is contrary to the evidence.  (*Stokes* v. *Metropolitan Street Ry. Co.,* 173 Mo. App. 676, [160 S. W. 46].)  Unless, therefore, we can say that, under the undisputed physical facts, the accident could not possibly have been due to defendant's negligence as alleged in the complaint, we must affirm the judgment.  It is not sufficient that the story told by plaintiff and his witnesses may be improbable.  It is for the jury or the trial judge to weigh and balance probabilities.  We cannot reverse upon the ground that the finding of negligence is contrary to the evidence unless we can see that the fact as found contravenes recognized physical laws, and that therefore it is impossible that the accident could have been due to the negligence alleged in the complaint.

[3]  Tested by the foregoing, we cannot say that the finding that defendant's negligence was the proximate cause of the accident is not supported by the evidence.  We think the evidence shows beyond peradventure that plaintiff's injuries resulted from the motorcycle being crowded from the paved road into the ditch.  There seem to be but two possible alternatives: 1. Either the motorcycle was crowded off the macadamized road into the soft dirt of the ditch by the automobile coming up behind it and forcing it off; or 2. The motorcycle overtook the automobile, as testified to by defendant's witnesses, and, endeavoring to pass on the wrong side, was crowded off for lack of space, but through no fault of defendant.  One of these two alternatives must be

adopted. The angle at which the motorcycle would leave the macadamized road and go into the ditch would be substantially the same under either of these two possible theories. The only difference would be that, in one case, that presented by the theory that defendant's automobile crowded the motorcycle off the hard pavement, the motorcycle would be traveling at a speed not exceeding fifteen to twenty miles an hour when leaving the hard macadam; while in the other case, that presented by defendant's theory of the accident, the motorcycle would be traveling at a much higher rate of speed when going off the hard pavement. It is conceded that plaintiff's leg was broken in the accident, that the motorcycle went into the ditch, and that plaintiff was thrown over the board wall and into the orchard where he was found unconscious. The witnesses on both sides agree as to these effects of the accident. The disagreement is as to the cause of the accident. In determining the question as to whether the accident could have been due to defendant's fault, in negligently crowding the motorcycle into the ditch, without doing violence to any of the universally recognized laws of the physical universe, we seem to be confronted, in the final analysis, with this question: Could plaintiff and his son have been thrown over the board wall into the orchard if their motorcycle was traveling at a speed of not to exceed fifteen to twenty miles an hour when it went into the ditch? For, regardless of its speed, it must have gone off the road at approximately the same angle under either of the two possible versions of the accident presented by the respective parties to the action. Therefore, unless we can say that plaintiff and his son could not possibly have been thrown over the wall and into the orchard if the motorcycle was going at the speed described by plaintiff's witnesses, but that such an eventuality was possible if it was going at a higher rate of speed testified to by defendant's witnesses, we cannot say that the accident could not possibly be due to defendant's negligence. We are unable to say that if the motorcycle went off the hard macadam at the speed testified to by plaintiff's witnesses, plaintiff could not have been thrown into the orchard and his leg broken. The manner in which plaintiff and his son were thrown over the board wall would suggest a considerable rate of speed on the part of the motorcycle. But it

could hardly be held, as a matter of law or a demonstration of physics, that the results shown could not be accomplished at a rate of fifteen to twenty miles per hour. The distance at which plaintiff and his son were found beyond the board wall may be accounted for on the theory that after being thrown over the top they slid or rolled down the embankment, which the evidence shows sloped toward the orchard.

The fact that the bruises on plaintiff's leg were on the inside and not the outside can be accounted for by the fact that the outer part of his leg came in contact with the comparatively smooth surface of the wall, while the inner side may have been struck at the time of the impact by some sharp or jagged part of the motorcycle.

Probably appellant would not seriously contend that the accident could by no possibility be caused by defendant's negligence in crowding the motorcycle off the hard pavement, even though no bruises were found on the outside of plaintiff's leg, and notwithstanding the motorcycle riders were thrown over the board wall into the orchard. **[4]** As we understand counsel's argument, what appellant does contend for is that there are certain details of the accident, as described by plaintiff and his witnesses, that are irreconcilably in conflict with certain admitted physical facts. For example, plaintiff, in one part of his evidence, while trying to fix on a map the spots where the several occurrences happened, testified, in effect, that he slid off the motorcycle into the ditch at a spot about ninety to one hundred feet distant from where he was found lying in the orchard as he regained consciousness. Such inconsistencies, however, would not necessarily prevent a recovery by plaintiff. It is not to be supposed that witnesses to an accident that happens in the twinkling of an eye should accurately observe all the details. Much less is it probable that one who is injured in the accident, and rendered unconscious, should be able to give a correct account of all the quickly happening events. It cannot be laid down as a rule of law that a plaintiff in a personal injury case cannot recover unless the court can see that every detail of the accident, as testified to by the plaintiff and his witnesses, is consistent with admitted physical facts and the laws of science. Undoubtedly where some of the details of an accident, as described by a witness, conflict with admitted physical facts, the whole story of the

accident, as given by that witness, may be entirely discredited; but, as an appellate court, we cannot reverse unless we can say that the admitted physical facts are wholly irreconcilable with the negligence alleged in the complaint. To entitle respondent to an affirmance, it is sufficient if it can be said that, notwithstanding the admitted physical circumstances, the accident could have been caused by the negligence charged in the complaint. We hold that the reasonableness of plaintiff's version of the accident was a question of fact for the trial court, and that its finding thereon is conclusive here.

It is claimed that those parts of the findings wherein the court finds, in effect, that defendant violated certain ordinances of the county of Los Angeles are unsupported by the evidence, for the reason that no county ordinance was introduced during the trial. A sufficient reply to this contention is that these parts of the court's findings may be entirely discarded and the remaining findings still be sufficient to sustain the judgment.

There is no other point that merits discussion.

Judgment affirmed.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 6, 1920.

All the Justices concurred.