[Civ. No. 9627. Second Appellate District, Division One.—March 11, 1936.]

CHARLES W. CHASE, Appellant, v. JOSEPH JONKEY, Respondent.

Hindman & Davis and J. Kingsley Chadeayne for Appellant.

J. M. Clements for Respondent.

DORAN, J.—This is an action for damages resulting from an automobile accident which occurred at the intersection of Sunset Boulevard and Van Ness Avenue in Los Angeles. The accident happened in the month of August, about 5 o'clock in the evening. The two streets above mentioned intersect at right angles. Sunset Boulevard is eighty feet wide and Van Ness Avenue is sixty feet wide. Sunset Boulevard is a main thoroughfare with "stop" signs posted at its entrance from Van Ness Avenue for traffic traveling north and south on Van Ness.

Quoting from the reporter's transcript of the testimony, plaintiff's description of the accident is as follows:

"Well, I was driving north . . . as I said. I was on the way to take dinner at a friend's house. When I came to Sunset I stopped, and I saw cars coming in bunches from the east on Sunset. I left several bunches of them go by, I don't know how many, maybe twenty, maybe twenty-five or thirty cars all told may have gone by before I started to go out. I

looked to the west down Sunset, and I could see—I only saw one car, there may have been some other cars back of it, but they were quite a distance back. As I then started to go across, that is, put my car into low, and then into second, and by the time I got to center of Sunset I looked again to the right to see that no cars were coming near me, and there were none near me, and then I started to the north, turned my head, and I saw the car that must have struck me coming, let's see, how shall I describe it? Well, say going a little bit of an angle, diagonally across, apparently in front of me, on Sunset.''

Plaintiff's witness, Glasburg, quoting substantially from the reporter's transcript, testified as follows:

''I was driving in an easterly direction on Sunset, waiting for a possible opportunity to make a left-hand turn; we were, I would say, possibly seventy-five or eighty feet from the intersection. Well, as near as I can recollect, there was a car passed us on the right, and then this car on the left passed, because I recall it was hugging the center line on the left-hand side, hugging the center line as much as it possibly could, because it was on the wrong side of the road, which rather frightened me, because I was getting ready for a left-hand turn, and I hadn't figured on any car coming in that direction. At this time plaintiff's car was proceeding slowly across Sunset Boulevard when the car that passed me on the left, which I should say was traveling at least sixty miles per hour, struck him. The front of plaintiff's car at the time of the collision was just about the center of the intersection.''

Miss Isabel Sturr, who was riding with the witness Glasburg, gave substantially the same account of the accident.

The defendant's witness, Frances Malcom, who was riding with defendant at the time of the accident, testified in part as follows: ''Q. Now, let's get this straight again. When you saw Mr. Chase's car it was just sticking its front end out into Sunset about a foot beyond this south line? A. Yes. Q. At that time your car was where? A. Just before the intersection, approaching the intersection.''

The defendant himself testified as follows with respect to this phase of the case: ''Q. Where was Mr. Chase's car when you first saw it? A. Well, when I first saw him he was just starting up. Q. Whereabouts? Where was he as far as the

intersection was concerned? A. Well, he was approximately even with the curb line of Sunset. Q. You were where at that time? A. I was just entering the intersection; approximately, I should say a little behind the curb line of Van Ness, maybe a couple or three feet." Defendant Jonkey also testified that at the time he entered the intersection he was traveling not to exceed twenty-five miles an hour, and denied that he drove his car north of the center line of Sunset Boulevard.

It is undisputed that the force of the collision swung the plaintiff's car around to the east, and when it came to rest it was pointed in a southeasterly direction with the front thereof about fifteen feet from the south curb of Sunset Boulevard on the east side of Van Ness.

The foregoing is not all of the evidence, but a substantial portion thereof. The court found that the defendant was guilty of negligence but that plaintiff was guilty of contributory negligence, and gave judgment for the defendant.

Plaintiff appeals on the sole ground that there was no competent evidence upon which the court could base its finding that plaintiff was negligent and that such negligence directly and proximately contributed to his injuries and damage. This contention by plaintiff and appellant must be sustained.

The argument by respondent that there is a very sharp conflict in the evidence which the trial court resolved in favor of the defendant, and which may not be disturbed upon appeal, is unavailing.

As to the conduct of the plaintiff, there is no conflict in the evidence. There is no dispute as to where the point of impact occurred, nor as to the location of the cars after the impact, when they came to rest. Plaintiff did everything that it was humanly possible for a prudent, careful and cautious driver to do in proceeding to cross the thoroughfare, and respondent's effort to apply the rule that: "One who looks and doesn't see what he could not have failed to see, is guilty of contributory negligence as a matter of law" is unimpressive.

Viewing defendant's testimony and that of his companion in its most favorable light, the defendant disregarded section 131 of the California Vehicle Act, as amended by Statutes of 1931, page 2126, by usurping plaintiff's right of way.

Respondent's argument that plaintiff's car struck defendant's car is definitely refuted by the undisputed evidence of the physical facts, which this court cannot ignore.

As was said in *Austin* v. *Newton*, 46 Cal. App. 493 [189 Pac. 471]: "Undoubtedly an appellate court, in reviewing the evidence, is bound to exercise its intelligence, and in doing so must recognize that certain facts are controlled by immutable physical laws. It cannot permit the verdict of a jury to change such facts, because, as said in *Quigley* v. *Naughton*, 100 App. Div. 476 [91 N. Y. Supp. 491], to do so would, in effect, destroy the intelligence of the court. And when the undisputed circumstances show that the story told by litigant and his witnesses cannot by any possibility be true, or when their testimony is inherently impossible, the appellate court should not hesitate to reverse the judgment, to the end that the cause again may be submitted to the determination of a jury or trial judge." In *Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [93 Pac. 377], the court reviewed the law as follows: "A finding against the great weight and preponderance of the evidence can be maintained on the doctrine of 'conflict' only where the alleged conflict rests upon evidence, either direct or circumstantial, which so materially contradicts the testimony on the other side, or is so radically inconsistent with it, as to leave room in a fair and reasonable mind to find the fact either way. This feature of the rule upon the 'conflict' of evidence has been heretofore declared by this court. In *Smith* v. *Belshaw*, 89 Cal. 427 [26 Pac. 834], the court said: 'While we will not disturb the verdict of a jury where the evidence is conflicting upon substantial matters, yet in all cases the verdict must have some meritorious support from the evidence or be set aside and disregarded.' In *Hedge* v. *Williams*, 131 Cal. 455 [82 Am. St. Rep. 366, 63 Pac. 721, 64 Pac. 106], the court says: 'Upon the part of respondent it is insisted that the verdict of the jury is conclusive as to the capacity in which Fontain was acting in repairing the tank. This contention can only be sound if there was a *substantial conflict of the evidence.*' (The italics are ours.) In *Driscoll* v. *Cable Ry. Co.*, 97 Cal. 553 [33 Am. St. Rep. 203, 32 Pac. 591], it is said: 'The rule is well established that this court will not disturb a verdict where there is a conflict of evidence on material points, and

when there is evidence to support the verdict; but such conflict and such evidence must be real and substantial.'"

■ The evidence clearly reveals that plaintiff and appellant was at the intersection and was waiting relatively some time before the defendant and respondent arrived at the crossing. He waited patiently and then proceeded cautiously, after looking in both directions, and to find under the circumstances that he was guilty of negligence would be the equivalent of holding that an operator of an automobile, under such conditions, crosses a thoroughfare at his peril.

The notice of appeal seeks to effect an appeal from the order denying a motion for a new trial, which order is not appealable; such appeal from such order is dismissed.

Judgment is reversed and cause remanded.

York, J., concurred.

HOUSER, P. J., Dissenting.—I dissent. The decisive question that has been submitted to this court, on an appeal by plaintiff from a judgment that was rendered against him, is based upon the specification of error that the evidence adduced on the hearing of the action was insufficient to justify the finding that was made by the trial court to the effect that plaintiff was guilty of contributory negligence and consequently was not entitled to recover a judgment against defendant, notwithstanding the fact that defendant also was adjudged to have been guilty of negligence in the premises.

Concededly, the negligence of defendant has nothing to do with the question here at issue. Nor should the decision by this court be at all influenced by the possible fact that, considering the entire evidence in the case, it may have preponderated to the effect that plaintiff was not guilty of negligence, and consequently that plaintiff should have recovered a judgment against defendant. To the contrary, the only proper question with which this court should concern itself is whether the finding of fact made by the trial court was supported by any substantial evidence. And, to my mind, the affirmative answer to that question may be discovered largely in the testimony given by the plaintiff himself, as has been set forth in the main opinion herein. He testified that after having stopped his automobile at the intersection, and before he essayed the crossing thereof, he "looked to the *east*" (from

which direction he was in no immediate danger) ; *thereafter* and still *before* starting his automobile, plaintiff testified, "I looked to the *west—I only saw one car; there may have been some other cars back of it,* but they were quite a distance back." *After that,* that is to say, *after* thus having taken observations, plaintiff *then* "started to go across". As expressed by plaintiff: "I *then* . . . put my car into low"; all of which must have consumed an appreciable space of time. As another witness described plaintiff's conduct, plaintiff "was looking east as he started out from the boulevard stop". After getting his automobile started in "low", he changed the gear thereof into "second";—*still failing to again look to the west.* Continuing with his statement, plaintiff testified: "And by the time I got about to the *center of Sunset* I again looked to the right" (which was to the *east* and not the direction from which he should have anticipated danger). And after all that, "*Then* I started to the north; turned my head, and I saw the car that must have struck me. . . . My car was *about the center line of Sunset.*"

"Q. You didn't look *west* again after you started across the intersection, did you? A. Not turn to look to the left (west), no. There were *more* cars coming from the *east. When I got out to the center,* and I turned my head and looked again."

It thus becomes clear that plaintiff looked for an approaching automobile from the west *before* he placed the gear of his automobile in "low"; and that he did not again look in that direction until after his automobile had arrived at "about the center" of the intersection. In other words, according to plaintiff's own testimony, as far as exercising care was concerned, during all the time that his automobile was traveling across the first half of the intersection plaintiff might just as well have had his eyes closed.

In addition thereto, although plaintiff testified that when he saw defendant's automobile it was "30 feet, maybe", from plaintiff, he did nothing to avoid the happening of the accident. In answer to the question, "Did you do anything to avoid the accident—either put on your brakes—?", plaintiff replied: "I did not have time. The man was coming like lightning." In that connection, testimony might be noted to the effect that plaintiff was traveling very slowly,—from

10 to 15 miles per hour,—and that defendant's automobile was traveling at the rate of about 25 miles per hour. If that evidence was believed to be true by the trial judge, it may be difficult to understand just why plaintiff did not stop his automobile, or at least make some effort to do so, and thus prevent the happening of the accident. But to the contrary, testimony given by defendant indicates that instead of trying to stop his automobile, plaintiff endeavored to drive it faster. Defendant stated: "I think (plaintiff) stepped on it, trying to get across the intersection." The evidence also shows that plaintiff's automobile ran into defendant's automobile; hence had plaintiff retarded the motion of his automobile even slightly, the accident probably would not have occurred.

Considering plaintiff's failure to see defendant's automobile at a time before he started to cross the intersection, it may be remembered that he testified that when he looked he "only saw one car; there may have been some other cars back of it, but they were quite a distance back". Of course, that in itself constitutes an admission on the part of plaintiff that at that time he actually saw other automobiles approaching the intersection; but even so, that he elected to essay the crossing without thereafter looking again in the direction from which he was threatened with danger. Moreover, on analysis of the situation at that time, the "quite-a-distance-back" of the approaching automobile from the point of the collision dwindles very appreciably. Although, as hereinbefore noted, it appears in evidence that in driving across the intersection plaintiff was traveling at from 10 to 15 miles per hour, other testimony in that regard, which also may have been believed by the trial court, fixed the speed of plaintiff's automobile at from 15 to 20 miles, or even 25 miles, per hour. Adopting as correct (as the trial court had the right to adopt) the estimate of 20 miles per hour, and taking into consideration the fact that the street was 80 feet wide, in going to "about the center", plaintiff would have traveled 40 feet, which at 20 miles per hour would have occupied a space of less than one and one-half seconds, or about one and one-third seconds. Now, if again accepting as true testimony given by defendant and the young woman who was with him in his automobile, the greatest speed which his automobile attained was 35 miles per hour. At that rate, in one and one-half seconds as-

sumedly occupied by plaintiff from the time he started his automobile until he reached the center of the intersection where the collision occurred, defendant's automobile would be less than 78 feet from that point, which distance would be somewhat less than the width of the street which plaintiff was attempting to cross. And considering that it was broad daylight, and that plaintiff's sight was good, it readily may have been concluded by the trial judge that if plaintiff looked to the west for the approach of defendant's automobile he did so very carelessly. But even assuming that plaintiff was traveling at only 15 miles per hour and that the speed of defendant's automobile was as high as 60 miles per hour, again a computation of "speed and distance" establishes the fact that when plaintiff first looked to the west defendant's automobile was no farther than 160 feet from the point of collision, which is not much greater than the depth of an ordinary city lot. Manifestly, had plaintiff looked carefully, as he was legally bound to do, not only would he have observed that defendant's automobile was approaching the intersection, but also that it was doing so at an unusually high rate of speed, and consequently that it would be exceedingly dangerous for plaintiff to attempt to cross its path.

Without meaning to draw a "deadly parallel", if in circumstances similar to those portrayed by plaintiff's testimony he had struck and killed a small child that had been running in the street, who would be willing to declare, as a matter of law, as against a verdict of a jury to the contrary, that plaintiff had not been guilty of negligence in the premises?

And again, with the greatest respect for the opinions of my associates (but nevertheless unable, or at least unwilling, to repress my own), to my mind, for this court to declare, contrary to the findings of fact made by the trial court, that plaintiff's conduct at the time and place in question was properly and legally expressive of that which in the conditions then existing should and would have been exercised by a person that was using ordinary care in his own behalf and for his own safety, is to substitute the opinon of this court on the facts of the case for the opinion of the trial court with reference thereto; which, as I understand the rule applicable in the premises, is not in accordance with appellate court practice.

The general rule is that ordinarily, and in proper circumstances, the trial judge has the right either to believe, or to reject as incredible or unbelievable, the whole or any part of the evidence adduced on the trial of the action; and in the instant case, assuming that he believed the facts to be in accord with the evidence to which attention hereinbefore has been directed, and that he made deductions therefrom in accord with those hereinbefore indicated, it is clear that he was warranted in drawing the conclusion that plaintiff was guilty of contributory negligence.

I conclude that the judgment should be affirmed.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1936.