[Civ. No. 1970. Fourth Appellate District.—November 4, 1936.]

RUSSELL W. OSGOOD, Respondent, v. THE CITY OF SAN DIEGO (a Municipal Corporation), Appellant.

D. L. Ault, City Attorney, and J. H. McKinney and William Roy Ives, Deputies City Attorney, for Appellant.

Dempster McKee and Charles Fox, Jr., for Respondent.

Ivan Kelso, John R. Berryman, Jr., and Thomas J. White, as *Amici Curiae* on Behalf of Respondent.

MARKS, J.—This is an action for damages for personal injuries suffered by plaintiff in an automobile collision.

The City of San Diego is a municipal corporation operating under a freeholders' charter. On February 27, 1935, Solon C. Armstrong was one of its police officers and was driving a city-owned automobile on city business, but not as an authorized emergency vehicle. At the time of the accident the provisions of the California Vehicle Act were in effect and not the Vehicle Code which was subsequently adopted. Therefore, our citations of statute law will be from the former.

On February 27, 1935, Russell W. Osgood, a young man of the age of twenty-three years, was a student in the San Diego State College. At about eleven-thirty o'clock on the morning of that day he was traveling from his classes to his home in a Ford coupe, westerly on El Cajon Avenue, a public street of the City of San Diego. At the intersection of that street with Fifty-sixth Street he was seriously injured in a collision between the coupe which he was driving and the Ford sedan driven by Armstrong. He filed suit against the City of San Diego and Armstrong. The case was tried before a jury. At the close of plaintiff's case the trial judge granted a motion for nonsuit made on behalf of Armstrong. The jury returned a verdict against the city in the sum of six thousand dollars.

While the city urges several grounds for reversal of the judgment we need consider but two of them here, namely, that there is no evidence to show any negligence on the part of Armstrong, and, that the evidence shows Osgood guilty of contributory negligence as a matter of law. In considering these questions we are mindful of the rules that require us to resolve all conflicts in the evidence in favor of plaintiff, and to draw all reasonable inferences from the evidence in favor of the affirmance of the judgment. While we must bear these rules in mind, we are firmly bound by the rules that the record must contain some evidence showing negligence on the part of Armstrong before we can conclude that the implied finding of the jury of negligence on Armstrong's part has evidentiary support, and, that we cannot be influenced by any feeling of sympathy for plaintiff because of his serious and permanent injuries. The same applies as to the question of the contributory negligence of plaintiff. While an appellate court is always slow to reverse a judgment based on a verdict of a jury, still, to partially paraphrase language used in *Austin* v. *Newton,* 46 Cal. App. 493, 497 [189 Pac. 471], the members of such a court in reviewing evidence are bound to use their intelligence. They cannot permit the verdict of a jury to change the proven facts because "as said in *Quigley* v. *Naughton,* 100 App. Div. 476 [91 N. Y. Supp. 491], to do so would, in effect, destroy the intelligence of the court". No mere sympathy for a badly injured plaintiff can justify

any departure from the firmly established rule that upon him rests the burden of proving the negligence of his adversary. (*Matthews* v. *Southern Pacific Co.*, 15 Cal. App. (2d) 36 [59 Pac. (2d) 220].)

A study of the record discloses that many facts of the case are not in dispute. Some facts were stipulated to during the trial. Such facts should be accepted as true, both in the trial court, and here, and cannot be contradicted by the testimony of a witness whose evidence amounts to little more than the expression of an opinion. Upon the few points wherein the evidence conflicts we will confine our statement of the facts to those most favorable to plaintiff, and will disregard the conflicting evidence.

El Cajon Avenue runs in an easterly and westerly direction and is a main artery of traffic, sixty feet in width, at least east of Fifty-sixth Street. At the place of the accident it has three traffic lanes on the south side of its center line. On the north side of its center line, east of Fifty-sixth Street, it has three traffic lanes, while on the west side of Fifty-sixth Street it has but two traffic lanes. Fifty-sixth Street is thirty feet wide between curbs. Fifty-eighth Street intersects El Cajon Avenue at right angles and is over six hundred feet east from Fifty-sixth Street. It is on the top of a rise and El Cajon Avenue rises on a five and ninety-six one hundredths per cent grade from Fifty-sixth Street to Fifty-eighth Street so that plaintiff was descending this grade for more than six hundred feet when approaching the scene of the accident. The day was clear and the pavement dry at the time of the accident. There were no other vehicles near enough to affect the free movement of the two cars.

In his testimony plaintiff thus described the accident:

"Reaching to about a point about one block (three hundred feet) east of Fifty-sixth street I saw a Ford sedan approaching the intersection of Fifty-sixth and El Cajon. I slowed down my car as soon as I saw his hand reach out of the window to make a left-hand turn, and he started to do so. Well, he started to make the turn and then he hesitated; so I have decided that he was going to give me the right of way, so I accelerated my car. At this point his car started up and I had no alternative. He had cut off my path of the road. And so I tried to swing right,

to my right, into Fifty-sixth street. In doing so I was turning my car to turn into Fifty-sixth street, and when my left rear bumper caught on his right front bumper it threw me over this way.''

He further testified that when he first observed the city-owned automobile it was about fifty feet west of the Fifty-sixth Street intersection and that Armstrong was signalling a left turn; that Armstrong continued making the turn; that Armstrong ''hesitated or stopped'' when the automobile he was driving reached the first white traffic line on the north side of the center line of El Cajon Avenue; that when plaintiff was about one hundred twenty feet from the intersection he slowed his car to about fifteen miles per hour for about ten feet and then accelerated to twenty-five or thirty miles an hour; that Armstrong proceeded across the north half of El Cajon Avenue at about five miles an hour until six or eight feet south of the north curb line of El Cajon Avenue, when he stopped; that the four-wheel brakes of plaintiff's car were in good working condition and were sharply applied when that automobile was between forty-five and fifty feet from the defendant's car. At another place in his testimony plaintiff said when he reached the top of the rise at Fifty-eighth Street, more than six hundred feet east from the Fifty-sixth Street intersection, he then first saw the Armstrong car fifty feet west of the Fifty-sixth Street intersection. The defendant's car was about twelve feet six inches long. The four wheels of plaintiff's car left skid marks between fifty and sixty feet long, before the impact, and after it turned over it skidded on its side between five and fifteen feet. It is not disputed that in making the turn into Fifty-sixth Street the rear of the plaintiff's car skidded to its left so that its left rear bumperette hooked onto the right end of the front bumper of the Armstrong car and this caused the Osgood car to turn over on its side.

■ On the question of the contributory negligence of plaintiff, his counsel argue that because Armstrong hesitated, or practically stopped, when his car reached the first white line on the north half of El Cajon Avenue, that fact was sufficient to convey to plaintiff the information that Armstrong was yielding his right of way to plaintiff, and that plaintiff was justified in proceeding on his course.

Plaintiff was unwilling to testify that Armstrong brought his car to a complete stop. It was plaintiff's opinion that it did not stop, but hesitated, and then continued on its course when plaintiff was between one hundred ten and one hundred twenty feet away from it, and when plaintiff had reduced the speed of his car to fifteen miles an hour. The duration of Armstrong's hesitation, or possible stopping, was instantaneous, and was immediately followed by that car proceeding on its way. If the momentary hesitation or stopping of the automobile was sufficient to convey to plaintiff the idea that Armstrong was going to yield the right of way to him, Armstrong's immediate start, after hesitating, should have been sufficient notice to plaintiff that Armstrong had changed his mind, and should have caused plaintiff to keep his car under control and drive it "at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic . . . of the highway" and not to drive it "at such a speed as to endanger the life, limb or property of any person" as required by subdivision a of section 113 of the California Vehicle Act.

Plaintiff suggests that as the permissive speed on El Cajon Avenue at and near the place of the accident was forty-five miles an hour, and as he was driving at considerably less than that speed, he should not be held guilty of contributory negligence as a matter of law. A statutory permissive speed on a highway is not a grant of right to enjoy such speed on all occasions. Such permissive speed is always subordinate to the more imperative command of subdivision a of section 113 of the California Vehicle Act that a driver must always keep his automobile under control and never drive it "at such a speed as to endanger the life, limb or property of any person".

■ When we turn to the question of the negligence of Armstrong, we find the record entirely lacking in any evidence to support the implied finding of negligence on his part.

Armstrong was lawfully proceeding easterly on El Cajon Avenue at a speed estimated at between twenty and twenty-two miles an hour and close to his right-hand side of the center of the street. (Secs. 113 and 129, Cal. Vehicle Act.) He gave the proper arm signal to indicate his intention to make a left turn. (Sec. 130, Cal. Vehicle Act.) He en-

tered the intersection first, and when plaintiff was about one hundred thirty feet away, and had, the right of way which plaintiff should have respected and should have yielded to him. (Sec. 131, Cal. Vehicle Act.) Every rule of the road gave Armstrong the right of way and every rule of caution and prudence as well as law required plaintiff to respect this right of way and to keep his car under control so that he could avoid the serious accident which happened.

Plaintiff urges in effect that because Armstrong hesitated or stopped in the intersection he should have realized that Osgood would consider this act an invitation to proceed and that it was negligence for Armstrong to continue on his way. Armstrong denied so stopping or hesitating, but as his testimony was disputed we must disregard it. When Armstrong started to make his left turn plaintiff was between one hundred twenty and three hundred feet distant from him and approaching at a speed of not more than thirty-five miles an hour. Armstrong had the right of way which plaintiff should have respected (sec. 131, California Vehicle Act) and, as he was obeying the law, had the right to assume that plaintiff would also obey the law and "would yield him the right of way, and would not attempt to cross said intersection in front of him". (*Driscoll* v. *Shipp,* 13 Cal. App. (2d) 59 [57 Pac. (2d) 177].) Furthermore, it should be observed that there was about forty feet of unoccupied and clear space on the paved portion of the highway to the rear of the Armstrong car when it finally stopped. Had plaintiff kept his car under proper control he could have passed to the rear of the Armstrong car in safety and without exposing himself or anyone else to the danger of injury. The following quotation from *Page* v. *Mazzei,* 213 Cal. 644, 3 Pac. (2d) 11, is particularly appropriate here: "The case, in all material respects, is so similar to the case of *Couchman* v. *Snelling,* 111 Cal. App. 192 [295 Pac. 845, 847], recently decided, that we approve and adopt the language of Mr. Presiding Justice Tyler in the opinion handed down in that cause, viz.: 'Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the

law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. (*Keyes* v. *Hawley*, 100 Cal. App. 53, 60 [279 Pac. 674].) Nor is a plaintiff required to yield the right of way to one a considerable distance away whose duty it is to slow down in crossing an intersection. (*Whitelaw* v. *McGilliard*, 179 Cal. 349 [176 Pac. 679].)' "

Plaintiff urges that the questions of his contributory negligence and the negligence of Armstrong are questions of fact addressed to the jury and that the implied findings of that body on those questions should not be disturbed on appeal. There is no more firmly founded nor closely followed rule than the one just stated when the evidence on either of the two questions is conflicting. In order to bring the rule into play there must be a conflict in the evidence. Where, as here, the evidence is not conflicting on these two questions, and reasonable minds uninfluenced by a natural sympathy for plaintiff can only reach the conclusion that the plaintiff was guilty of contributory negligence, and Armstrong was not guilty of any negligence, there is no place for the application of the rule and the questions are of law for the court and not of fact for the jury.

Having reached the conclusion that plaintiff was guilty of negligence that proximately contributed to his injury, and that Armstrong was not guilty of any negligence, it is unnecessary for us to consider the other assignments of error, for without negligence on the part of Armstrong there can be no liability on the part of the City of San Diego.

The judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 1, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1936.