[Civ. No. 16378.   First Dist., Div. Two.   July 21, 1955.]

LUCILLE E. HOAGLAND et al., Respondents, v. JOSEPH
A. CHARGIN III et al., Appellants.

Campbell, Custer, Warburton & Britton, Frank L. Custer and W. R. Dunn for Appellants.

Keith, Creede & Sedgwick and Scott Conley for Respondents.

KAUFMAN, J.—Defendants appeal from judgments in favor of plaintiffs rendered after jury verdicts in favor of all three plaintiffs against both defendants. The action arose out of an automobile accident on Bayshore Highway when the automobile driven by defendant Joseph Chargin III, and belonging to Joseph Chargin, Jr., was struck by plaintiff's automobile as the Chargin car was executing a left turn at the intersection of said highway with Story Road.

It was plaintiffs' and respondents' theory at the trial that appellant driver stopped between the islands on Bayshore Highway, and then cut across the southbound lanes thereof in a westerly direction without keeping a lookout for approaching vehicles. Appellants contended that defendant driver looked for traffic, saw only a truck approaching from the north, and proceeded to cross ahead of it when respondents' car came out from behind the truck and collided with appellant.

The collision occurred some time between 10:30 and 11 o'clock on a clear dry day as respondent Myrna Hoagland was driving a Chrysler sedan owned by her mother, Lucille Hoagland, southward on Bayshore Highway. The third respondent, Claudia Jean Eagle was a guest in the Hoagland car. All three were in the front seat.

Bayshore Highway, at the point where the accident occurred, is a divided highway having two lanes northward bound and two lanes southward, separated by a large grassy strip. At the Story Road intersection, the grassy strip is narrowed on the north side to admit a third southbound lane as a turnout for vehicles going eastward on Story Road. Although there is no similar additional lane for vehicles turning westward, as was the appellant driver, there was an area as wide as the grassy strip in which cars could come to a stop outside the lanes of traffic before turning left.

Defendant and appellant, Joseph Chargin III, had been driving northward on Bayshore, in a yellow Mercury convertible belonging to his father Joseph Chargin, Jr., and was attempting to negotiate a left turn westward into Story Road when the cars collided. He was accompanied by two

girls, La Verne Lawrence and Barbara Benassi. He testified that he came to a complete stop between the "island" before continuing left across the southbound lanes of Bayshore.

Lucille Hoagland testified that the Chrysler had been proceeding southward in the inner lane next to the dividing strip for at least a mile before reaching this intersection at a speed of between 50 and 55 miles per hour. She saw no traffic on Bayshore immediately in front of them. She said that when her car was 250 to 300 feet from the intersection she saw defendant's car in the intersection "or in the island cut out there where there is a division there for the traffic to cut through and he was—I saw this yellow car sitting there and he seemed to be either moving very slowly or actually stopped." She then looked away saying that she sensed no emergency because it was seemingly stationery. She did not call her daughter's attention to the car. Mrs. Hoagland next noticed appellant's car when she felt her car swerve and the brakes being applied. The Chargin car was then less than 50 feet away. The impact occurred in the outside southbound lane, the cars coming together "in a sort of V formation" with the left front fender of the Chrysler coming in contact with the right front of the Mercury.

Joseph Chargin III stated that as he stopped in the bay between the islands he saw a truck coming from the north in the outside southbound lane at a distance of about 400 or 500 feet. He started to cross the highway when the truck was about 200 feet distant. Chargin testified that he never saw the Chrysler until it was right on top of him. After he started across the highway he did not again look northward, but looked straight ahead until Miss Lawrence called his attention to it when it was just a few feet away. He put his foot on the accelerator in an attempt to avoid the collision but did not turn his car.

La Verne Lawrence, a passenger in the convertible, stated that when they were stopped in the intersection she saw a truck approaching from the north at a distance somewhere between 42 and 84 feet in the outer lane. When they were just about across the intersection, she saw the Chrysler pull out from behind the truck, at a speed of between 60 to 70 miles per hour. Neither she nor Joseph Chargin III, were able to give any description of this truck. Barbara Benassi, the other passenger in the Mercury, testified that their car

stopped between the islands. She had only a fleeting view of the Chrysler before the collision.

Myrna Hoagland, the driver of the Chrysler, suffered a retrograde amnesia, hence was unable to describe any of the events immediately leading up to the accident. Claudia Eagle, the third respondent, first saw the Mercury when it was about 300 or 400 feet away, traveling northward on the other side of the divided highway. She did not continue watching it, and saw it again when it was 35 or 40 feet away, when it seemed to be "popping out" in front of them.

Tony Costa, a witness called by plaintiffs, testified that he had stopped his car at the easterly border of Bayshore at the Story Road intersection, intending to drive across the highway westward. He saw the Chrysler coming from the north at about 50 miles per hour, but did not see any trucks in the vicinity. He had seen the Mercury traveling in the inner lane proceeding northward, but as he was looking northward on Bayshore to see if there were any cars behind the Chrysler he did not actually see the cars collide.

Defendants' witness Francis Prowse, stated that he was approaching Bayshore from the west on Story Road. He saw the commotion ahead, but did not actually see the collision occur. Immediately after the accident he noticed a truck parked about a block and a half south of the intersection, and that its driver walked back to the scene.

Officer Edward Lee of the State Highway Patrol testified that the Chrysler left 36 feet of skid marks on the highway. He said that immediately after the accident Joseph Chargin III, told him that he was northbound on Bayshore and into San Jose, "going about 25 miles per hour slowing down to make a left turn. It looked like it was clear, so I started to make left turn go across when other car hit me."

All of the occupants of both cars except Claudia Eagle were thrown out by the impact, and the driverless cars went into the ditch to the right of the southbound lane.

The jury returned unanimous verdicts against both defendants. Following proceedings for a new trial, Lucille's verdict was reduced from $12,500 to $10,500; Myrna's from $20,000 to $16,000; and Claudia's from $20,000 to $13,000.

Appellants contend that their motion for a nonsuit should have been granted, since there is no evidence that the Chrysler was dangerously near when defendant driver undertook to complete his left turn in the intersection. If the

Chrysler was not sufficiently near to constitute an immediate hazard, the driver of the Mercury had the right of way to proceed across the highway. (Veh. Code, § 551.) Appellants cite *Couchman* v. *Snelling,* 111 Cal.App. 192 [295 P. 845], to the effect that where a car has actually entered an intersection first, the driver of the first car has the right to assume that he will be given the right of way and that the other car will slow down if necessary and yield the right of way. The intersection involved in the Couchman case was that of two city streets, and the court was discussing the rule applicable to traffic entering the ordinary intersection. Under section 550, subdivision (a) of the Vehicle Code, at such an intersection the driver approaching the intersection shall yield the right of way to the vehicle which has already entered the intersection. ▪ Although it is true the language of the Couchman case which is quoted by appellants, was cited with approval in *Osgood* v. *City of San Diego,* 17 Cal.App.2d 345 [62 P.2d 195], which was a case involving a left turn, still it is clear from section 551 of the Vehicle Code, that the person first in the intersection, if he is about to make a left turn, does not necessarily have the right of way. He has such right of way only if no car is within the intersection or approaching so close thereto as to constitute an immediate hazard. Whether or not the driver of the Mercury should have realized that the Chrysler was an immediate hazard appears to be in the present case a question of fact for the jury to decide. In the Osgood case, the verdict for plaintiff was reversed, the court stating that the evidence was not conflicting, that defendant had given the proper signal, had entered the intersection first when plaintiff was about 130 feet away traveling at 35 miles per hour. The court did not discuss the effect of the language in the statute which required defendant to yield the right of way to cars which were an immediate hazard. That language was added in 1929, and was applicable to this case which arose in 1935. Apparently the court felt that the only inference that could be drawn was that a car 130 feet away, whose driver admitted seeing the signal, and who slowed down, then speeded up again when plaintiff hesitated, defendant interpreting this as a yielding by plaintiff of the right of way to him, was guilty of negligence as a matter of law. This evidence also clearly demonstrated that defendant was at such a distance and driving a sufficiently

slow speed that plaintiff could assume defendant was not an immediate hazard.

■ It is to be noted that in the present case, we are dealing with a through highway in the open country, not with city streets, as in the Couchman and Osgood cases, *supra*. Whether or not a driver is negligent in making a left turn in front of a car approaching at 50 to 55 miles per hour on such a highway, appears to be a jury question. If the car maintained a speed of 55 miles per hour it would travel 80.3 feet per second reaching the intersection in 3.1 seconds. The words "immediate hazard" are not defined in the statute. The definition given to the jury in this case is that a vehicle is so close as to constitute an immediate hazard "whenever if a reasonably prudent person were in the position of the driver intending to make a left turn he would apprehend the probability of an accident were he then to attempt crossing the path of the approaching vehicle." Hence, in a case such as this, it is clearly for the jury to decide whether or not the respondent's car was an immediate hazard. It is to be noted that in the Osgood and Couchman cases, as well as the recent case of *Grasso* v. *Cunial*, 106 Cal.App.2d 294 [235 P.2d 32], cited by appellants, there was testimony by the drivers of both cars concerning their conduct, whereas in the present case the plaintiffs' driver was unable to testify because of retrograde amnesia. The only evidence we have of her conduct is the application of the brakes and the swerving of the car.

There was also in the present case the testimony of Mr. Costa, who was waiting to cross the intersection at the same time that defendant was attempting to negotiate the left turn. He was allowing the Chrysler to clear the intersection before he would attempt to cross, which is also some evidence from which it might be inferred that the oncoming car was an immediate hazard. Therefore the nonsuit was properly denied.

It is contended that Lucille Hoagland, the owner of the Chrysler, and the mother of the driver, Myrna Hoagland, was contributorily negligent as a matter of law because she saw the Mercury in the intersection when her car was 250 to 300 feet distant and failed to warn her daughter. We know of no case that holds that there is a duty on the part of a passenger to warn a driver of other cars or objects presumably within the driver's line of vision, or that a failure to do so is contributory negligence as a matter of law. The

case of *Du Bois* v. *Owen*, 16 Cal.App.2d 552 [60 P.2d 1019], cited by appellants, only holds that the owner of the car, asleep in the back seat at the time of the accident, may be held liable for the driver's negligence on the theory of permissive driving or agency.

Appellant contends that evidence of defaults entered in a suit filed by La Verne Lawrence, a passenger in defendants' Mercury, and her father, against Myrna and Lucille Hoagland, should have been admitted in evidence as admissions on the part of those plaintiffs in this action. Respondents objected that one cannot make an admission of facts of which he has no knowledge and offered to prove· by respondents' attorney that the default had been taken because of the attorney's inadvertence, mistake and excusable ignorance. The court ruled that there was a preliminary question of fact for it to decide, and outside the presence of the jury heard the testimony of respondents' attorney that he first learned that a default had been entered when he moved to consolidate the Lawrence action with another that had been filed by Miss Benassi, the other passenger in defendants' Mercury. He stated that because more than six months had elapsed, the default could not be set aside.

The only California case which appears to be in point on this question is *Estate of McCarthy*, 127 Cal.App. 80 [15 P.2d 223], in which a default entered several years previously was allowed in evidence to prove that a widow had no community property interest in certain property of an estate. In a divorce action which at one time had been filed by her deceased husband, he had alleged that there was no community property, and she had failed to answer. The McCarthy case was followed by the Ninth Circuit Court of Appeals in a case arising in the Northern District of California, *Thiel* v. *Southern Pac. Co.*, 149 F.2d 783, 787. This case was later reversed by the United States Supreme Court, but not on the issue with which we are here concerned.

Respondents contend that in the McCarthy case it does not appear that the default was entered due to the inadvertence of counsel and that there the defendant intentionally defaulted. ▊ It is clear that where the default is intentional it admits the allegations of the complaint.

In Wigmore on Evidence, section 1066, it is said: ''A *default* in another suit, leading to *judgment on ·default*, would make admissible against the then defaulting party in a

subsequent case the essential allegations on which the default was entered.''

It is true as respondents say, that an attorney does not have implied authority to surrender any substantial right of the client. (*Redsted* v. *Weiss,* 71 Cal.App.2d 660, 663 [163 P.2d 105].) An attorney may not confess judgment against his client without his client's consent. (*Pfister* v. *Wade,* 69 Cal. 133, 140 [10 P. 369].) It has been held that an unverified complaint in another action could not be admitted in evidence because it was unverified and it was not shown that plaintiff had knowledge of its contents. (*Solari* v. *Snow,* 101 Cal. 387 [35 P. 1004].) In *Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716 [232 P.2d 572], the court held that a purported admission by counsel in an affidavit filed for another purpose could be regarded as an admission only if intended to be one. Respondents say that here the default was not therefore admissible in evidence because entered due to the inadvertence of counsel, was not sanctioned by the client, and was never intended as an admission. With this contention we agree. It was for the trial court to determine under the facts preliminarily whether there was evidence to show any intention to make an admission and whether the default was entered because of inadvertence and excusable mistake. Here the trial court was entitled to determine under the evidence before it that the default was due to inadvertence and mistake and there was no intention to suffer a default.

Appellants contend the case of *Bohn* v. *Watson,* 130 Cal. App.2d 24 [278 P.2d 454] is controlling on this point. Under the facts of that case Bohn permitted a default judgment to be taken against her on advice of her counsel. This is not the situation here where the default was taken by reason of inadvertence of counsel and without respondents' knowledge and consent.

Furthermore this evidence of admissions was only cumulative and any error in excluding it cannot be considered as prejudicial within the meaning of article VI, section 4½ of the state Constitution.

It is urged that reversible error was committed in giving the following instruction :

''Now, we have said that in order that the plaintiffs may recover against the defendant, it is necessary that they establish that the defendant Joseph Chargin III was negligent in the operation of his Mercury, and that that operation was a

proximate cause of the accident just as in order to sustain the defense of contributory negligence urged on the part of the defendant with respect to any one or all of these plaintiffs, it is necessary for the defendant to establish in your minds that the plaintiffs were negligent and that their negligence or the negligence of one or more of them contributed or was a proximate cause of the accident.''

Appellants argue that the jury may have been led by this instruction to conclude that evidence produced by plaintiffs was not to be considered in deciding whether contributory negligence was proven. While it is stated in *Blanton* v. *Curry,* 20 Cal.2d 793, 804 [129 P.2d 1], that the true rule is that ''negligence on the part of plaintiff is a matter to be proved affirmatively by a defendant unless it can be inferred from the evidence given in the plaintiff's case,'' the court held that an instruction such as the one given here, while incomplete in form, could do no harm, and that appellant had offered no additional instruction on the subject. (And see *Ostertag* v. *Bethlehem Shipbuilding Corp.*, 65 Cal.App.2d 795, 803 [151 P.2d 647].) There is no merit in this contention.

The following instruction, while admitted to be correct in form, is criticized by appellants as being inapplicable and hence prejudicial in this case, since they contend that respondents' car was not *dangerously* close before defendant driver attempted to cross in front of it. ''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, and which he might have seen in the exercise of ordinary care, it follows either that there is an irreconcilable conflict in such evidence or the person was negligently inattentive.'' This argument goes back to the argument made on the question of nonsuit. That was a fact question, on which there was evidence under plaintiffs' theory of the case, hence the instruction was properly given. The jury was also properly instructed immediately following the instruction objected to on the meaning of proximate cause.

Appellants make several claims that error was committed in rejecting certain instructions offered by them. The court read section 510 of the Vehicle Code to the jury and stated that a violation of such rule is negligence, and then

refused to instruct that if the jury found a violation of the section on the part of Miss Hoagland, and such violation on her part was neither justified nor excusable, then she was guilty of negligence as a matter of law, and such negligence would be the sole proximate cause of the accident.

Respondents point out that the instruction as given was more favorable to appellants than the one requested, since it did not contain the elements of excuse or justification. Any error that was committed was certainly not prejudicial to appellants, and they cannot complain that the court did not instruct that such negligent speed might be the sole proximate cause, since the jury was fully instructed on the meaning of negligence and proximate cause.

Next appellants complain that the court, having given an instruction in the language of section 551, subdivision (a) of the Vehicle Code, failed to give their instruction paraphrasing subsection (b) of the same section.

That section reads as follows:

"(a) The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

"(b) Said driver turning left having so yielded and having given a signal when and as required by this code may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the driver making the left turn."

Appellants did not ask that subsection (b) of section 551 be read to the jury but asked that their instruction be given:

"Where a motorist intending to make a left-hand turn has given a signal as required by law, and has entered an intersection before another approaching it, said other vehicle being far enough away as not to constitute an immediate hazard, such motorist making such left hand turn has the right-of-way over the vehicle approaching the intersection, and it is the duty of the motorist approaching the intersection to slow up and yield the right-of-way and, if necessary, stop in order to permit the party desiring to make the left-hand turn to complete his left-hand turn."

Appellant correctly contends that he was entitled to an instruction on his theory of the case which was that respondents' car was not an immediate hazard when he attempted his turn, and if this were true he had the right of way which

respondents must yield to him. That his right of way prevailed over plaintiffs' in such case was not emphasized to the jury, although it is certainly implied in subsection (a) that the driver making the left turn has the right of way if the approaching driver does not. However, subsection (b) makes it clear that the driver making the left turn has the right of way over drivers who are not immediate hazards.

The instruction offered however, instead of subsection (b), is objectionable in that it might lead the jury to believe that if a car can be brought to a stop within the remaining distance, it cannot be considered an immediate hazard. Even if it would have been advisable to instruct on subsection (b), the requested instruction being erroneous in part, the court was not in error in refusing to give or to modify the requested instruction since the jury was otherwise properly instructed as to the law of the case. (24 Cal.Jur., pp. 802-804, § 77.)

It is charged that error was also committed in refusing appellants' instructions relating to their right to assume that the driver of the Chrysler would obey the law and yield the right of way. The instruction given on this subject was correct and covered the matter fairly and adequately.

Again error is claimed in the refusal of an instruction requested on the subject of the common law duty of a driver. The court instructed that ''it is the duty of every person using the public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision.'' ''Ordinary care'' was defined in another part of the instructions; hence there was no error in refusing appellants' more elaborate instruction.

Finally, appellants contend that prejudicial error was committed in the refusal of an instruction advising the jury that the fact that the judge has given instructions on damages does not mean that he believes that damages should or should not be given. In *Rasich* v. *Gladding McBean & Co.*, 90 Cal.App.2d 241, 243 [202 P.2d 576], it was held that the refusal of such an instruction was prejudicial error. However, in that case it appears that there were other irregularities, such as the fact that the court thought it possible that the jury had been improperly instructed by the bailiff.

The court in its numerous instructions on damages again and again used the language ''should you determine,'' ''if you should determine,'' ''if you should find,'' ''if it should be in favor of,'' ''if you believe from the evidence,'' etc. The

court made it clear that the damage instructions were contingent upon the jury first finding liability. It is difficult to see how the failure to give the requested instruction could be prejudicial error.

It is said in 5 Corpus Juris Secundum, page 1164, that "The giving of cautionary instructions stands on a different footing from the giving of instructions on the law of the case and is a matter wholly within the discretion of the court."

This case was fully and fairly tried. No prejudicial error appears in the record before us and we are convinced that the jury's verdict finds ample support in the evidence and record.

Judgments affirmed.

Nourse, P. J., concurred.

DOOLING, J.—I concur in the judgment. I am not satisfied that the trial court's action in excluding the default judgment was not error. Whether the default was acquiesced in by the Hoaglands was a question of fact and fact questions in a jury trial should be left to the jury. By accepting the evidence that the default was due solely to counsels' inadvertence the trial court took this fact question from the jury. However I agree that on the record before us this was not prejudicial.

A petition for a rehearing was denied August 19, 1955, and appellants' petition for a hearing by the Supreme Court was denied September 15, 1955.