[Civ. No. 17239. First Dist., Div. One. May 20, 1957.]

ESTHER MacLEAN, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants; BENNY D'AMICO et al., Respondents.

**136**

George Olshausen for Appellant.

Bledsoe, Smith, Cathcart, Johnson & Phelps, Joseph W. Rogers, Jr., Alexander, Bacon & Mundhenk, Herbert Chamberlin and Boyd & Taylor for Respondents.

PETERS, P. J.—Plaintiff alighted from a bus operated by the City and County of San Francisco, fell and was injured. She brought an action for damages, joining the City and County, and three sets of contractors who were working on a construction job near the scene of the accident. At the first trial plaintiff was nonsuited as to all defendants. On appeal, this court affirmed as to the City and County and as to one of the contractors, but reversed as to the other two contractors, one being the general contractor Barsotti and Bernardini, and the other being the plastering subcontractor, D'Amico. (*MacLean* v. *City & County of San Francisco*, 127 Cal.App.2d 263 [273 P.2d 698].) Before the second trial plaintiff joined as a new defendant Arnaud, the owner of the property on which the construction job was being performed. The case proceeded to trial before a jury against the owner and the two named contractors. The jury brought in a verdict in favor of all three defendants. From the judgment entered on this verdict plaintiff again appeals. Her main three contentions are that there were prejudicial errors in the instructions to the jury, in the admission and exclusion of evidence, and in the proceedings after the jury retired.

Appellant first contends that the jury should not have been instructed at all on the issue of contributory negligence, and that even if general instructions on this issue were proper

the standard of care applicable to her was erroneously defined. These two contentions are interwoven. The trial court, in the course of an unusually clear and extensive charge to the jury, gave an instruction, correct as to form, on contributory negligence. It also gave, of its own motion, the following instruction:

"General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive."

It is the contention of appellant that there was no evidence of her contributory negligence, and that, on the prior appeal, it was so held as a matter of law. On the prior appeal in discussing the propriety of the nonsuit as to the city, and in particular in discussing whether the city should be charged with knowledge of the condition then existing in the street, this court stated: "There was no evidence that the material on which plaintiff slipped was visible to either plaintiff or the driver . . ." (127 Cal.App.2d at p. 270.) What was there said, of course, related to the evidence and issues then before the court, and was not said in reference to the issue of contributory negligence which was not then before the court. While the present record is somewhat similar to the prior one, and, in some respects, identical, it also differs in some material respects. The present record contains enough evidence to warrant the instruction on contributory negligence.

The general facts have been set forth in the prior opinion and need not be repeated in detail here. So far as the point under discussion is concerned, the record shows that appellant, a passenger on a municipal bus, about 8 p. m. on August 16, 1949, alighted from that bus at the corner of Scott and Chestnut Streets in San Francisco. The bus stop was then occupied by other vehicles so that appellant's bus stopped at an angle to the curb and about six to eight feet therefrom. Appellant alighted from the bus, carrying a suitcase and a handbag.

On both trials it was appellant's contention that she slipped in some wet material that was the residue from work being done nearby by respondent contractors for respondent owner.

All the witnesses testified that about three feet from the curb and between the bus and the curb there was a pool of some semi-liquid substance, which was quite slimy and probably was refuse from the construction job, that is, wet cement, mortar, plaster, slag or wash. There is evidence that this material was washed down the street from the construction job.

There was evidence that this pool of wet material was noticeable if a person looked at it—in fact, appellant so testified. The witnesses described the illumination in the area as "dark," or "fair," "or just past dusk," or "darker than dusk, a little," or "fairly dark" or as "past dusk." There was evidence that the sun had set at 7:02 p. m. that night; that a neon sign at the corner furnished some illumination, and that the lights from the bus on which plaintiff was riding reflected from the back of the bus that was in the loading zone and, to some extent, illuminated the scene.

Appellant testified that, before alighting, she looked down the side street and saw that no bus was approaching from that direction; that she observed a bus and an automobile parked in the bus loading zone; and that the curb she desired to reach was in her "full line of vision." She also testified that, after alighting, she took a "quick stride," or a "good stride" toward the curb and then slipped and fell. Appellant and two witnesses testified that they did not see the pool until after the accident.

This evidence was sufficient to justify the instruction on contributory negligence. There is evidence that the substance that caused the fall was visible to the onlooker. Appellant was carrying a heavy suitcase and a handbag. This, together with her quick stride forward, and her possible failure to observe where she was walking, was sufficient to warrant the instruction.

■ In *Washington* v. *City & County of San Francisco,* 123 Cal.App.2d 235, 238 [266 P.2d 828], the proper rule is stated as follows: "In considering the testimony with a view to determining whether, as a matter of law, there was sufficient evidence to justify the court in giving the instructions complained of, this testimony must be considered in a light most favorable to respondent, for in order to find that the giving of any certain instruction was not warranted by the evidence, the court must find that, as a matter of law, there is in the record not even slight or inconclusive evidence on the point covered by the instruction. ■ In 24 California

Jurisprudence, page 832, the rule is stated as follows: 'In order to warrant the giving of an instruction it is not necessary that the evidence upon an issue be clear and convincing, it being sufficient if there be slight or, at least, some evidence upon the issue. ▮ *Even though the evidence may not be sufficient to sustain the cause of action or defense to which an instruction applies, a reversal may not be had if the evidence on other defenses is sufficient to sustain the verdict.'* . . .

"And in 53 American Jurisprudence, page 457: 'In determining whether there is evidence that will warrant an instruction, the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence on which to base it, although it may be slight and inconclusive, or opposed to the preponderance of the evidence.' "

Tested by this standard, there was sufficient evidence to justify the court in instructing on contributory negligence.

But, says appellant, even if it was proper to instruct on contributory negligence the court by giving the "to look is to see" instruction above quoted applied an erroneous and prejudicial standard of care to her. Appellant seems to argue that the challenged instruction only applies to persons crossing railroad tracks during daylight hours and not to persons on city streets after dark, and claims that she was entitled to assume, as a matter of law, that the street was safe.

In arguing this point appellant erroneously assumes that the challenged instruction told the jury that her failure to see what was within sight, as a matter of law, constituted negligent inattention. The instruction says no such thing. It left the question to the jury. The jury, under the instruction and under the evidence, could have found, as a fact, that the wet substance was not in plain sight, or that even if it were, appellant was not negligently inattentive. If appellant desired a more detailed instruction on this phase of the case she should have offered it. This she did not do.

The cases cited by appellant do not support her contention on this issue. Thus, in *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 P. 513], the court was concerned with whether the evidence was such that it disproved, as a matter of law, plaintiff's evidence that he did stop, look and listen for oncoming trains. The court said that because it was dark, the train had no light and made no noise on its approach, to look did not necessarily mean plaintiff would have seen the train

nor that his testimony that he listened and did not hear was necessarily untrue. Obviously, the case differs from the instant one where the evidence is capable of the interpretation that the substance causing the fall was plainly visible to one in the street, and where the jury found against appellant on this issue.

There are also a series of cases cited by appellant which contain language that one using a sidewalk may assume it to be a safe place. Thus, in *Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712 [103 P. 190], the defendant was found to have been negligent in a case where the plaintiff fell into a hole in the street dug by defendant. The court instructed that whether the signals and warnings put up by defendant, if any, should have been seen by plaintiff, and whether her failure to see them constituted contributory negligence, were questions of fact. On appeal the defendant objected that the challenged instruction failed to include possible carelessness or abstraction on the part of plaintiff. In response to this contention the court said: "Mere abstraction or lack of attention to the condition of the sidewalk by a pedestrian passing over it cannot be assigned as contributory negligence." (155 Cal. at p. 722.)

To the same effect is *Barry* v. *Terkildsen*, 72 Cal. 254 [13 P. 657], where the plaintiff fell in a hole in the sidewalk. There was evidence that plaintiff was momentarily distracted and so did not notice the hole. The court stated (p. 256): "In our opinion, there is nothing in the point that respondent was guilty of contributory negligence. A sidewalk of a street in a city not near a crossing may be taken by one passing over it to be a safe and not a dangerous place. In this case the respondent had a right to presume that the sidewalk was in the same condition in which she had always found it; and the fact that her attention was momentarily attracted in another direction,—a thing of the most common occurrence to travelers along a street,—falls far short of that contributory negligence *which in law* defeats an action for damages." (Emphasis added.)

All that these cases stand for is the proposition that momentary inattention does not, in a sidewalk or street case, constitute negligence as a matter of law. But, as already pointed out, in the present case, the question was simply presented to the jury as a factual one. This was proper.

A case which states the proper rule is *Peters* v. *City & County of San Francisco*, 41 Cal.2d 419 [260 P.2d 55]. There,

the plaintiff, an elderly woman, fell when she stepped into a depression in the sidewalk in front of defendant's apartment house. Although the accident happened at noon on a clear day, she testified that she did not see the depression. The Supreme Court rejected the defendant's argument that this made the plaintiff guilty of contributory negligence *as a matter of law,* holding that the question was properly *one of fact.* The court stated (p. 424): "It is well settled that, in the absence of notice or knowledge to the contrary, a pedestrian making normal use of the public sidewalk has a right to assume that it is in reasonably safe condition, and while he must use ordinary care for his personal safety and make reasonable use of his faculties to avoid injury to himself, he is not required to keep his eyes fixed on the ground or to be on a constant lookout for danger. [Citations, including the Perkins and Barry cases.] Even if a defect is one which might be visible to a person who is looking for such a condition, it does not follow that a pedestrian is guilty of negligence as a matter of law in failing to see and avoid it. [Citations.] *Whether plaintiff made reasonable use of her faculties and whether she should have observed the condition which caused her injury were questions of fact.*" (Emphasis added.)

Thus, while pedestrians making normal use of the sidewalk or streets have the right to assume that the area is safe, they can be guilty of contributory negligence if the jury finds that they looked but did not see what was plainly visible. That is all the challenged instruction told the jury. In the instant case, as already pointed out, the evidence was in conflict. Interpreted most strongly in favor of respondents, it supports the implied finding that plaintiff was contributively negligent in not seeing what was, under one version of the evidence, plainly visible.

There are many cases where the "to look is to see" instruction has been held to have been properly given in cases not involving railroad crossings and not involving conditions of good visibility. (See *Powell* v. *Bartness,* 139 Cal.App.2d 394 [294 P.2d 150], and *Hoagland* v. *Chargin,* 134 Cal.App. 2d 466 [286 P.2d 931], involving intersection collisions on sunny days; *Gilbert* v. *Pessin Grocery Co.,* 132 Cal.App.2d 212 [282 P.2d 148], involving a fall by a pedestrian after nightfall; *Curland* v. *Los Angeles County Fair Assn.,* 118 Cal.App.2d 691 [285 P.2d 1063], involving an accident during daylight; *Newman* v. *Fox West Coast Theatres,* 86 Cal.App. 2d 428 [194 P.2d 706], where the instruction was specifically

142

approved; *LaBranch* v. *Scott*, 82 Cal.App.2d 1 [185 P.2d 823], and *Lasater* v. *Oakland Scavenger Co.*, 71 Cal.App.2d 217 [162 P.2d 486], involving accidents after dark; *O'Brien* v. *Schellberg*, 59 Cal.App.2d 764 [140 P.2d 159], where the visibility was poor.)

Moreover, the instruction merely states an obvious fact. It has been held that even in a case where the instruction should not have been given, the giving of it could not have been prejudicial because the jury is told nothing it does not already know. (*Colbert* v. *Borland*, 147 Cal.App.2d 704 [106 P.2d 53].)

Appellant next complains of the exclusion by the court of a police accident report. She offered in evidence an accident report filed by the investigating police. Upon respondents' hearsay objection the report was excluded. It is now argued that this report was admissible under the Uniform Business Records as Evidence Act. (Code Civ. Proc., §§ 1953e to 1953g.)

The excluded report reads as follows: "The above named injured woman slipped and fell after she had alighted from a Municipal Railway Bus that was unable to park in the Bus Zone as another unknown vehicle forced the Bus to double park. Number and other information on the Bus unknown.

"Upon our investigation we discovered that the woman had slipped on wet MORTAR that apparently had been washed down from in front of 3204-Scott St. Construction work was being done at this location. We found that the Mortar had led from 3204-Scott St. to 3258A-Scott St. where the Mortar was very thick and wet. We were unable to find out any information about who the Contractor or person working at 3204-Scott St. was or the owner of the building.

"Fire department called by us, street washed down by the fire department to prevent another reoccurrence of this mishap."

There can be no doubt that, in a proper case, the business records exception applies to public documents as well as to private ones. (*Nichols* v. *McCoy*, 38 Cal.2d 447 [240 P.2d 569]; *Loper* v. *Morrison*, 23 Cal.2d 600 [145 P.2d 1].) The question is, does this exception apply to police reports of accidents?

There are a substantial number of cases on this subject. It was the general rule before the adoption of the so-called Model Act, adopted in some states, or the Uniform Act,

adopted in California, that such reports were not admissible, and it seems pretty well settled that the adoption of either of the two statutes mentioned did not change the rule.

The reason why such records are not admissible is stated as follows in McCormick on Evidence, page 602, section 286: "The chief foundation of the special reliability of business records is the requirement that they must be based upon the first-hand observation of someone whose job it is to know the facts recorded. . . . But if the evidence in the particular case discloses that the record was not based upon the report of an informant having the business duty to observe and report, then the record is not admissible under this exception, to show the truth of the matter reported to the recorder." Police accident reports are ordinarily based on the description of witnesses and others at the scene of the accident. Such informants, of course, have no business duty to render reports to the police.

The leading case on the subject, holding that under the Model Act such reports are inadmissible for the reasons stated above, is *Johnson* v. *Lutz*, 253 N.Y. 124 [170 N.E. 517]. The Lutz case was cited with approval and followed, and such reports held not admissible, in *Hoel* v. *City of Los Angeles*, 136 Cal.App.2d 295 [288 P.2d 989]. (See also *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386 [223 P.2d 862, 21 A.L.R.2d 1206]; 48 Columbia L.Rev. 920; 144 A.L.R. 727.)

In the present case the excluded report does not disclose on its face whether it is based on the officer's own observations or upon the observations of third parties. If the latter, the above cases require its exclusion. ▇ If the report was based on the officer's personal observations its exclusion, even if erroneous, could not have been prejudicial because the officers who prepared it were available as witnesses and, in fact, testified at the trial, and the report was used to refresh their recollections. Their testimony adequately covered the contents of the report.

▇ Appellant also objects to a ruling of the trial court permitting one of the partners of the general contractor to testify that he had not received notice that certain ordinances prohibiting accumulations of building materials in the streets were being violated by the subcontractors. This evidence should have been excluded. Plaintiff's theory of liability, so far as the general contractor was concerned, was that under the doctrine of *respondeat superior* the general contractor would be liable for the acts of the subcontractor in creation

of a public nuisance in violation of the general contractor's nondelegable duty to maintain safe and unobstructed public ways, regardless of actual notice. This was so declared to be the law in the prior opinion (127 Cal.App.2d at p. 268.)

But this erroneous ruling could not have been prejudicial. The jury was fully and correctly instructed on appellant's theory of the case in this regard. (R.T. 695-697.) Moreover, appellant's counsel, under section 2055 of the Code of Civil Procedure, examined the general contractors, who were also performing the carpentry work, at length, as to whether they had supervised the subcontractors in the matter of dumping materials in the gutters and as to whether the general contractors had actual knowledge that wet materials were being dumped there. This testimony, first brought out by appellant, is to the same general effect as the testimony under consideration. This amounts to a waiver of the error. (*Jameson* v. *Tully*, 178 Cal. 380 [173 P. 577].) Thus, the erroneous ruling was not prejudicial.

 Appellant next complains of the admission and exclusion of several items of evidence relating to the claimed liability of the respondent property owner. The owner's liability, if any, under the facts, was admittedly purely derivative. If the general and subcontractor were not liable, the owner could not be liable. Since we have concluded that the judgment must be affirmed as to the contractors, no prejudice could be suffered by any rulings on the evidence in reference to the owner.

 Appellant also objects to the failure of the court to give her proffered instruction to the effect that the city and county and the brick subcontractor were, as a matter of law, not guilty of any negligence proximately contributing to the accident. On the prior appeal this court affirmed nonsuits as to the city and the brick subcontractor, thus holding that, as a matter of law, there was no evidence that they were negligent. Appellant asserts it was error not to give the instruction because, so it is claimed, one of respondents' theories was that appellant fell while on the bus steps, and, without the proffered instruction, the jury may well have found that liability for the accident rested with the city.

It does not appear that on this trial respondents seriously argued that appellant fell while on the bus steps. The only evidence bearing on the matter at all was testimony from the former trial read into the record on this trial for purposes of impeachment. In the testimony from the former trial

there is no direct statement that appellant fell while on the bus steps. The same witness testified on the present trial that the fall occurred after appellant had taken two or three steps away from the bus. Thus, the basic premise of appellant's argument on this point is not borne out by the record.

It should also be pointed out that the jury was fully instructed on the doctrine of concurrent negligence, and were expressly instructed that if respondents were negligent they would be liable even though someone else was also negligent. Thus, even if the jury found the city negligent, which is most unlikely, such finding would not affect the liability of respondents. Thus, the failure to give the instruction was not prejudicial.

 Appellant next contends that the court committed prejudicial error in failing to have certain evidence reread to the jury. After retiring, the jury requested a reading of the testimony of two witnesses—that of Miss Claymore and Mr. Schlichtmann. The jury also requested a review of certain instructions. The instructions were read as requested. As to the testimony, the reporter, in response to an inquiry from the court, stated that it would take about four hours to read all of the requested testimony. The court asked the foreman if the requested testimony could not be "pinpointed" so as to save the reading of all of it. The foreman replied: "The only part is what they saw at the scene of the accident, just at the particular moment that Mrs. MacLean fell, just at that particular time." The judge then stated that he would read to the jury the requested instructions, and that he and the reporter and the attorneys would then "sit down and agree on certain portions to be read." The instructions were then read, and the jury retired. Counsel and the court then apparently conferred on the portions of the testimony to be read, and the jury was brought back. The court told the jury that "we went over the attorneys' notes . . . in order to condense" the testimony. The reporter then read 21 pages of the testimony given by Miss Claymore (R.T. 713 to 734), and 9 pages of the testimony of Henry Schlichtmann (R.T. 734-743). The record then shows that "the Court inquired of the Foreman whether the reading of the testimony by the Reporter covered the request of the jurors, and the Foreman replied that it was sufficient."

Appellant now claims error in failing to read other portions of the witnesses' testimony. It is difficult to follow appellant's charge of error. The selection of the portions

read was obviously a cooperative effort. Appellant made no objection to this procedure, nor does she claim that any testimony was not read that her counsel requested should be read. Moreover, practically every fact found in the omitted portion was covered by the portions read. Thus, there was no error.

The last contention of appellant is that her new trial motion should have been granted on the ground of "newly discovered evidence." It is claimed that an important item of evidence, marked at the first trial for identification, was missing during the second trial and not rediscovered until after the jury had retired.

This claimed "newly discovered evidence" relates to the question as to whether appellant fell on the bus steps or on the street. One of appellant's witnesses, Miss Claymore, gave a statement to an investigator that appellant had fallen in the street. This statement was used on the first trial, but appellant's counsel could not find it on the second trial. Appellant contends that Miss Claymore was impeached by respondents on this issue, that this amounted to an attack based on the claim of recent fabrication, and that for this reason the statement would have been admissible to rehabilitate the witness.

If it be assumed that the statement, if presented, would have been admissible, a point not entirely free from doubt, the record fails to demonstrate that appellant's counsel was not guilty of inexcusable neglect in failing to "discover" the document earlier. The clerk of the court averred that at the close of the first trial he handed appellant's counsel all documents marked for identification, including the statement in question. Appellant's counsel averred that he made a "diligent effort" to locate the document before trial by searching, without success, a box containing all of the exhibits from the first trial, and finally found the document in an envelope containing documents that, during the first trial, had been marked for identification. Counsel for respondents averred that appellant's search was not diligent, and one of the counsel averred that during the course of the trial he had seen the document in possession of counsel for appellant in the very place it was subsequently found. It is worthy of note that during the second trial appellant's counsel did not seek a continuance to search for the document, nor did he make any attempt to use a copy of the document, although copies were available. Thus, the trial court was amply justified in denying the motion on the ground that appellant had failed to support her burden of showing due diligence.

It should also be pointed out that the record shows that the redirect examination of Miss Claymore completely rehabilitated the witness on the issue involved, if the witness needed to be rehabilitated on this point. As already pointed out, the evidence was overwhelming that the accident happened in the street and not on the steps of the bus, and the respondents made no serious contention to the contrary. There was no abuse of discretion in denying the motion for a new trial.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1957. Carter, J., was of the opinion that the petition should be granted.