[Civ. No. 9571.   Third Dist.   May 8, 1959.]

SAM P. COLLA et al., Appellants, v. BEAVER LUMBER COMPANY et al., Respondents.

Tobriner, Lazarus, Brundage & Neyhart for Appellants.

Taft, Wright & Hopkins for Respondents.

SCHOTTKY, J.— Plaintiffs above-named [Sam P. Colla, and Frank Volano and Marino Fanucchi, partners under the firm name and style of Kelly Box Company] have appealed from a judgment in favor of defendants in an action in which plaintiff Sam P. Colla sought to recover for injuries sustained when a truck which he was driving collided with a truck which was being driven by defendant Beaver Lumber Company's employee, defendant Robert M. Cain. Frank Volano and Marino Fanucchi, partners under the firm name and style of Kelly Box Company, appeal from the judgment deny-

ing them recovery for damages to their truck which Colla was driving. The case was tried by the court sitting without a jury.

The record shows that the accident occurred on the morning of February 15, 1957, at the intersection of Sequoia Boulevard and Highway 29, which is near Vallejo. Highway 29 runs in a general northerly and southerly direction. It is a divided four-lane highway with two lanes in each direction. The opposing lanes are separated by concrete islands. Sequoia Boulevard enters Highway 29 from the east and a smaller road enters the highway from the west. Several hundred feet south of the intersection Highway 29 curves to the left, and some 500 feet south of the intersection the highway passes under United States Highway 40. At the time of the accident, the southbound lanes of Highway 29 were barricaded at the intersection, compelling all southbound traffic to make a left turn onto Sequoia Boulevard or a right turn onto the other road.

Colla was driving a truck loaded with empty boxes south on Highway 29. He testified as follows: He intended to make a left turn at the intersection. He slowed down, signaled for a left turn, and either stopped momentarily or almost stopped before making the turn. Before he turned he looked to the right, saw no traffic coming north and then proceeded across the intersection at a speed of 2 or 3 miles an hour. When he was crossing the white line separating the northbound lanes of traffic, he heard brakes screeching and saw the defendant's truck about 100 feet away traveling about 60 miles an hour. He then swerved the truck to the left and hit defendant's truck on the left-hand side some 10 or 12 feet from the front bumper.

A Mrs. LeDesma testified that she first recalled seeing the Kelly Box Company's truck coming toward the intersection at about 5 or 10 miles per hour. She saw it stop at the intersection. A few moments later she heard the sound of brakes screeching and she saw defendant's truck and trailer coming around the curve at a high speed. The next thing she knew there was a collision between the lumber truck and the vehicle crossing the intersection.

Cain who was driving the lumber truck and trailer, which incidentally was empty, was driving north on Highway 29. It was a clear day and visibility was good. He was familiar with the area and knew that the southbound traffic lanes were barricaded. He testified that he went through the underpass some 500 feet south of the intersection at a speed of about 35 miles per hour. He further testified that the intersection

was visible about 100 feet north of the underpass. When he first saw the vehicle Colla was driving, it was about 250 feet north of the intersection traveling less than 30 miles per hour. He saw the signal for a left turn. He also saw Colla give a stop signal. The approaching vehicle appeared to be slowing down. Cain testified he was sure it would be stopped. He then looked in his rear view mirrors to check traffic to the rear and upon glancing to the front at a spot about 120 feet south of the intersection saw the truck loaded with boxes proceeding to cross the intersection. Cain immediately applied the brakes and swerved to the right in an attempt to avoid the collision. The wheels of the trailer and truck laid down about 150 feet of skid mark. There was about 120 feet of skid mark from the point the brakes were applied to the point of impact.

The trial court found that the plaintiff Colla "was negligent and careless in the operation of said vehicle at the time of said collision, and that said negligence and carelessness of plaintiff, SAM P. COLLA, did proximately cause the collision . . .," and found also that defendant Cain was not negligent or careless in the operation of the vehicle owned by defendant Beaver Lumber Company.

Appellants make the following contentions:

1. The driver of the truck and trailer combination was guilty of negligence as a matter of law.

2. There is no evidence in this case from which it could even remotely be inferred that any part of the blame for this accident could be placed on Colla, and defendants completely failed in their burden of proving their affirmative defense of contributory negligence.

Appellants make an earnest and vigorous argument in support of these contentions. And if the evidence were susceptible of no other construction than the one placed upon it by appellants, we would agree with them that the judgment should be reversed. However, we are convinced that there is an issue of fact as to whether or not appellant Colla was guilty of contributory negligence and that the finding of the trial court against appellants on that issue is supported by the record.

Issues of fact must be determined by the trial court; and an appellate tribunal is bound by the familiar rule that before it can be justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that accepting the full force of the evidence, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evi-

dence in conflict therewith, it still appears that the law precludes such party from recovering a judgment.

Section 551 of the Vehicle Code at the time of the collision here involved provided:

"(a) The driver of a vehicle intending to turn to the left at an intersection shall yield the right of way to any vehicle which has approached or is approaching the intersection from the opposite direction and which is so close as to constitute a hazard at any time during the turning movement.

"(b) Said driver turning left having so yielded and having given a signal when and as required by this code may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the driver making the left turn."

Appellants contend that the evidence is uncontradicted that appellant Colla had given a left turn signal and had otherwise complied with the statutory requirement and had the right of way over respondent's vehicle which was some distance away, and that Colla had a right to rely on the assumption that his right of way would be respected. Appellants rely strongly on *Osgood* v. *City of San Diego*, 17 Cal.App.2d 345, and quote the following from page 351 [62 P.2d 195]:

"'Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. (Keyes v. Hawley, 100 Cal.App. 53, 60 [279 P. 674].) Nor is a plaintiff required to yield the right of way to one a considerable distance away whose duty it is to slow down in crossing an intersection. (Whitelaw v. McGilliard, 179 Cal. 349 [176 P. 679].)'" (Emphasis added.)

However, in the later case of *Hoagland* v. *Chargin*, 134 Cal.App.2d 466, 471 [286 P.2d 931], in which a hearing was denied, the court referred to the Osgood case as follows:

". . . Although it is true the language of the Couchman case which is quoted by appellants, was cited with approval in *Osgood* v. *City of San Diego*, 17 Cal.App.2d 345 [62 P.2d 195], which was a case involving a left turn, still it is clear from section 551 of the Vehicle Code, that the person first in the intersection, if he is about to make a left turn, does not necessarily have the right of way. He has such right of way only

if no car is within the intersection or approaching so close thereto as to constitute an immediate hazard. Whether or not the driver of the Mercury should have realized that the Chrysler was an immediate hazard appears to be in the present case a question of fact for the jury to decide. In the Osgood case, the verdict for plaintiff was reversed, the court stating that the evidence was not conflicting, that defendant had given the proper signal, had entered the intersection first when plaintiff was about 130 feet away traveling at 35 miles per hour. The court did not discuss the effect of the language in the statute which required defendant to yield the right of way to cars which were an immediate hazard. That language was added in 1929, and was applicable to this case which arose in 1935. Apparently the court felt that the only inference that could be drawn was that a car 130 feet away, whose driver admitted seeing the signal, and who slowed down, then speeded up again when plaintiff hesitated, defendant interpreting this as a yielding by plaintiff of the right of way to him, was guilty of negligence as a matter of law. This evidence also clearly demonstrated that defendant was at such a distance and driving a sufficiently slow speed that plaintiff could assume defendant was not an immediate hazard.''

We do not regard the Osgood case as determinative of the instant case because we do not believe that we would be justified in holding that the issue of whether or not Colla was guilty of negligence was not a question of fact for the court to determine. ■ As stated in *Washam* v. *Peerless Automatic Staple Machine Co.*, 45 Cal.App.2d 174, at page 177 [113 P.2d 724]:

''. . . But if such other car is not within the intersection, the motorist must complete his left turn only after he has cautiously estimated that the vehicle approaching from the opposite direction is not 'so close to the intersection as to constitute an immediate hazard.' If he miscalculates and a collision occurs, upon a trial of the resulting controversy, it is a fact to be determined from the evidence whether a reasonably prudent person in making the same turn would, under such circumstances have reached the same conclusion.''

■ We believe that under the evidence in the instant case the trier of fact could reasonably conclude that Colla was negligent in proceeding to make a left turn in front of the approaching truck. ■ It is common knowledge that one of the most hazardous of all highway traffic maneuvers is a left turn by a slow moving vehicle in the face of oncoming traffic.

(*Gigliotti* v. *Nunes*, 45 Cal.2d 85 [286 P.2d 809].) ▮ If Cain was 400 feet south of the intersection when Colla was some 200 feet north of the intersection, one may well infer that he rounded the curve before Colla proceeded across the intersection. The question of Colla's negligence would then be one for the trier of the fact to determine. If Colla failed to see the approaching truck, the trier of the fact could well infer that either Colla did not look or that he was oblivious of what he saw. If he did see it, the court could reasonably conclude that Colla had miscalculated in estimating that the truck Cain was driving was not so close to the intersection as to constitute an immediate hazard and that he was guilty of negligence in making the left turn.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.