[Civ. No. 15701.   First Dist., Div. One.   Mar. 25, 1954.]

SPASOJE N. CHUCK et al., Appellants, v. JOHN F. ALVES et al., Respondents.

Bohnett, Hill, Cottrell & Bohnett and L. D. Bohnett for Appellants.

John H. Machado for Respondents.

FINLEY, J. pro tem.\*—This action involves a dispute over water rights. Judgment was for defendants, the respondents here.

Appellants are riparian land owners along Stevens Creek in Santa Clara County. This stream rises in the Santa Cruz Mountains and flows in a general northerly direction across Santa Clara Valley and empties into San Francisco Bay.

Respondents divert water from Stevens Creek at a point above the holdings of appellants and carry the water so diverted through a pipeline for a distance of over two miles to irrigate their own and other lands lying along the pipeline. Their water right dates back to an appropriation made by S. F. Lieb in the year 1894, at which time Lieb constructed a dam across the stream bed and diverted water through a pipeline which was 12 inches in diameter for the first 2,000 feet, and 11 inches in diameter for its remaining length of approximately two miles. In the year 1936 the heirs of Lieb, who had inherited the water right and pipeline, constructed a new 16-inch line alongside the old at the same depth and on the same grade as the original. No change was made in the diversion works excepting that the box through which the diverted water passes from the stream to the pipeline was slightly extended. After construction of the new line the old pipeline was abandoned.

According to the statement in appellants' opening brief, the only fact in dispute is "Whether respondents and their predecessors in interest have taken more water through the 16-inch pipe than they did through the 12-11 inch pipe. . . ." The trial court found that they had not and that 1,400 gallons per minute "has been used by defendants and their predecessors in interest since and prior to 1936. . . ." Appellants claim that this finding is not supported by the evidence, and that it is not only "contrary to the overwhelming weight of the evidence disclosed by the record, but is absurd on its face."

After defining this single issue in their opening brief, respondents discuss at some length the question whether, after passage of the Water Commission Act in California, a water right may be gained through adverse use. This point we do not consider to be relevant under the circumstances here. If the finding of the trial court regarding the 1,400 gallons

---

\*Assigned by Chairman of Judicial Council.

per minute taken before and after 1936 is supported by the evidence, then the legal effect of the judgment is to confirm in respondents the Lieb appropriative right at 1,400 gallons per minute and that is all. The effect would not be to engraft upon it an additional prescriptive right because, assuming prescriptive rights are still possible of acquisition since passage of the Water Commission Act, the court would have had to find an enlarged use for the prescriptive period over and above the Lieb appropriative right to confirm in respondents something in addition to it. This the trial court did not do. By stipulation at the beginning of the trial, appellants admitted the validity of the Lieb appropriative right and, from all that appears, do not question the 1,400 gallons per minute figure in connection with this right. Appellants' point apparently is that more than 1,400 gallons per minute have been used since 1936, and that the evidence is insufficient to support the finding that *only* 1,400 gallons per minute have been and are being taken from the stream since that date.

As has been held so many times where the point of insufficiency of the evidence is at issue, the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence in the record to support the questioned finding. If there is, the appellate court cannot substitute its conclusion for that of the trial court, even though it might feel that if it had been the trier of fact it would have arrived at a different conclusion. (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Estate of Meister,* 77 Cal.App.2d 487 [175 P.2d 574]; *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384]; *Dandini* v. *Dandini,* 82 Cal.App.2d 263 [186 P.2d 41].)

It is true, of course, if it appears without question that a finding by a trial court is contrary to immutable physical laws, any evidence to the contrary would lack any substantiality whatsoever and would have to be disregarded. (10 Cal.Jur. 1170; *Neilson* v. *Houle,* 200 Cal. 726 [254 P. 891]; *Tobola* v. *Wholey,* 75 Cal.App.2d 351 [170 P.2d 952]; *Ace Realty Co.* v. *Friedman,* 106 Cal.App.2d 805 [236 P.2d 174].) Appellants urge that this rule applies here; that because the new pipeline is larger than the old and on the same grade and is kept full, a finding that more water was not being carried through it would be contrary to the immutable laws of physics and absurd on its face. But this is not

necessarily true for other factors enter into such a determination which have apparently not been considered by appellants.

It is without question a law of physics that under the same conditions, and where the flow is unobstructed and with sufficient water to fill both pipes to their capacity, a larger pipe will carry and deliver more water than a smaller one. But unless we are considering unobstructed flow and water in sufficient quantity to keep both pipes supplied to their limit of carrying capacity, other factors enter. If only 1,400 gallons of water per minute are fed into a pipe no more than that amount will flow out of it, no matter how large the pipe or how small, so long as it is large enough to carry 1,400 gallons per minute. Taking two pipelines side by side of the sizes involved here, if 1,400 gallons per minute are fed into each pipe and through valves but 100 gallons per minute are allowed to flow out of each, then before long both pipes would become full but each pipe would only be delivering 100 gallons per minute at the outlet. Appellants have interpreted a witness' testimony that the large pipe was "kept full" to mean that "respondents diverted water to the full capacity of the pipeline in use," which is erroneous. The line could have been "kept full" without a single drop of water being taken out at delivery points, but if water was being diverted "to the full capacity of the pipeline" this would mean that all the water that the line could possibly carry was being diverted and allowed to flow through it without obstruction. The two are obviously quite different. The pipe would be "kept full" in both cases but in the instance first mentioned there would be no flow at all, while in the second there would be considerable.

We see then that the size of the pipe taken alone is not a complete index to the amount of water diverted by respondents. For all that has been called to our attention or that our review of the transcript discloses, there is no evidence of any measuring device at the diversion point which would restrict the flow of the creek into the pipeline. Apparently the waters from the creek drop through a screen into a pit or gallery and thence flow directly into the pipeline. The screen will permit the passage of more water than the pipe will carry so the limiting factor as to the quantity of water that could be diverted, if available for diversion, would be the unobstructed flow capacity of the pipeline. It is obvious then that if sufficient water were available a good

deal more water could be carried through the 16-inch line than the old 12-11-inch line. Approximately two and one-half times more according to an engineer who testified. But according to substantial testimony and within the limits of the amount of water actually flowing in Stevens Creek, apparently the factor limiting the amount that has actually been used by respondents and their predecessors is the size and number of outlets or risers along the pipeline through which the water has been and is taken from it.

There is substantial testimony in the record that these have not been changed; that they are the same since the new 16-inch line was laid as before, and that not more than 1,400 gallons of water per minute have been taken from the line through these risers either before or after the new line was laid. Apparently the trial court believed this testimony and since, as we have shown, it is substantial and not at all inconsistent with any law of nature or physics, this court is bound by it. The 1,400 gallons per minute is well within the amount of the original appropriation by S. F. Lieb. His notice called for 225 inches under a 4-inch pressure, which would be roughly equivalent to 2,020 gallons per minute.

It appears then that appellants have appealed from a judgment which did not purport to enlarge upon the original appropriative right. It merely defined and confirmed that right unto respondents insofar as it had been perfected and kept alive by beneficial uses. Regardless of the size of the pipeline respondents are entitled to use only 1,400 gallons per minute of the waters of Stevens Creek and no more.

In view of our conclusion that no question of prescriptive rights is involved here, it will not be necessary to discuss the other points referred to by counsel in their briefs.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 23, 1954, and appellants' petition for a hearing by the Supreme Court was denied May 19, 1954.