[Civ. No. 17302. First Dist., Div. One. July 1, 1957.]

EMILO BUTTICCI, Appellant, v. SCHINDEL FURNITURE COMPANY (Individual's Fictitious Name) et al., Respondents.

[Civ. No. 17303. First Dist., Div. One. July 1, 1957.]

JOHN BUTTICCI, Appellant, v. HENRY SCHINDEL et al., Respondents.

Jarvis, Miller & Decker, Joseph E. Isaacs and Donald M. Haet for Appellants.

Bronson, Bronson & McKinnon for Respondents.

PETERS, P. J.—As a result of injuries received in an intersection accident between two automobiles, John Butticci, the driver of one car, and Emilo Butticci, his son, brought separate actions for damages against Henry Schindel, the driver of the other car. Schindel cross-complained against John Butticci. The actions were consolidated for trial. The jury brought in verdicts for all of the defendants. From the judgments entered on these verdicts John and Emilo Butticci appeal, contending that the evidence does not support the verdicts, and that the verdicts are fatally inconsistent.

The scene of the accident was the intersection of Madrid and Persia Streets in San Francisco. Persia is a through

street running east and west, and Madrid crosses it at right angles. There are stop signs so located as to require Madrid traffic to stop before entering the intersection. Both streets are straight, Madrid is level, while Persia slopes down hill from the east. The accident occurred on September 16, 1954, shortly after 8:30 a. m. The weather was clear and the pavement dry.

John Butticci, in his 1948 Ford pick-up truck, with his son Emilo as a passenger, was driving south on Madrid. Schindel, in his 1947 Cadillac, was going west on Persia approaching the intersection at a speed of between 25 to 30 miles per hour. John Butticci testified that he came to a full stop at the arterial stop sign; that he looked both ways on Persia; that he then proceeded in low gear to the middle of the intersection where Schindel's car hit his left rear wheel and fender. This version of the accident was corroborated by Emilo. It was contradicted by Schindel. He was positive that the Butticci vehicle did not stop before entering the intersection. He testified that when he was about 10 to 20 feet from the intersection he first saw the Butticci car; that he then applied his brakes lightly, and then, when he saw that the Butticci car was not going to stop at the stop sign, he pushed his brake pedal as hard as he could, but could not avoid the accident. His car left skid marks measuring 45 feet for the front wheels and 36 feet for the rear. Butticci's car did not leave skid marks. All three principals claimed personal injuries.

Appellants contend that this evidence establishes that Schindel was guilty of negligence as a matter of law. This contention is predicated upon what they call "undisputed physical facts" and "immutable laws of nature." Relying on the length of the skid marks, on presumed reaction times, and on Schindel's testimony that just prior to the accident he was going 25 to 30 miles per hour, appellants assert that Schindel must have been at least 86 feet from the intersection when he first saw the Butticci vehicle. This, so it is claimed, demonstrates that Schindel, as a matter of law, was negligently driving at an excessive rate of speed, and negligently failed to apply his brakes in time to avoid the accident. Schindel, of course, had testified that he was but 10 to 20 feet from the intersection when he first saw the Butticci vehicle, but this testimony is classified by appellants as "unbelievable." This testimony, however, finds some corroboration in the testimony of the officer who investigated the accident and drew the skid

marks to scale on a map. This map indicates that the location of the skid marks is consistent with Schindel's testimony.

Computations such as those made by appellants, in view of the obvious variables involved in an automobile collision, are looked on with considerable doubt by an appellate court. While such computations make a good jury argument, they seldom can be used successfully to rebut, as a matter of law, the testimony of a credible witness. ▉ It is undoubtedly the law that "if it appears without question that a finding by a trial court is contrary to immutable physical laws, any evidence to the contrary would lack any substantiality whatsoever and would have to be disregarded." (*Chuck* v. *Alves,* 124 Cal.App.2d 144, 146 [268 P.2d 94] ; see also 4 Cal.Jur. 2d § 610, p. 492.) But it is also true that appellate courts are understandably reluctant to hold that so-called natural laws must take precedence over the testimony of an apparently credible witness. (*Neilson* v. *Houle,* 200 Cal. 726 [254 P. 891] ; *Postier* v. *Landau,* 121 Cal.App.2d 98 [262 P.2d 565].) ▉ The proper rule was stated as follows in *Austin* v. *Newton,* 46 Cal.App. 493, 498 [189 P. 471] : "On the other hand, as an appellate court, it is our bounden duty to exercise great care and caution in applying the tests of common sense and common knowledge of physical laws to a given state of facts. Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable. For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal upon the ground that the verdict is contrary to the evidence."

▉ Evidence of skid marks is, of course, admissible on the issue of speed (*Linde* v. *Emmick,* 16 Cal.App.2d 676 [61 P.2d 338]), but it is not such "conclusive" or "unanswerable" evidence that it necessarily overcomes contrary oral testimony. (*Douglass* v. *Crabtree,* 57 Cal.App.2d 568 [134 P.2d 912] ; *Roselle* v. *Beach,* 51 Cal.App.2d 579 [125 P.2d 77] ; *Doyle* v. *Loyd,* 45 Cal.App.2d 493 [114 P.2d 398] ; *Finley* v. *Steiner,* 40 Cal.App.2d 331 [104 P.2d 819] ; *Coughman* v. *Harman,* 135 Cal.App. 49 [26 P.2d 851].)

Appellants place considerable reliance on Schindel's testi-

mony that he was going 25 to 30 miles per hour immediately prior to the accident, and point out that any speed in excess of 25 miles per hour in the residential area involved would violate section 511(b) of the Vehicle Code. ██ Of course, as was pointed out in *Tossman* v. *Newman,* 37 Cal.2d 522, 525 [233 P.2d 1], ''disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances, but a presumption of negligence arises on proof of such a violation, and the presumption can be rebutted by evidence of justification or excuse.'' Even if Schindel were violating the speed limit, the jury could have inferred justification from the facts that Persia was a through street; that Schindel's car was in good mechanical condition, and that the day was clear and dry. It should also be mentioned that appellants asked for and received an instruction to the effect that speed alone is neither proof of negligence nor proof of ordinary care. This would seem to preclude the raising of the point on appeal.

██ Appellants next urge that the verdicts are inconsistent as a matter of law. It will be remembered that by its verdicts the jury exonerated all parties. Appellant argues that the accident must have been caused by the negligence of either John Butticci or of Schindel, or of both; that it is ''undisputed'' that all three persons involved were injured; that, therefore, the only consistent verdicts that could have been rendered were: (1) For both Butticcis if Schindel was found to be negligent; or (2) for Schindel and against John Butticci if the latter was found to be negligent; or (3) for Emilo Butticci and against Schindel if Schindel or both drivers were negligent.

The fallacy of this argument is that the premise that these were the only three possible theories upon which the jury could have decided the case is unsound. It may have found that neither of the drivers was negligent—that is, that neither the Butticcis nor Schindel established the negligence of the other by a preponderance of the evidence. Both drivers stoutly maintained their innocence of any carelessness, and both could have been believed. (*Mitchell* v. *Stringer,* 133 Cal.App. 207 [23 P.2d 765].) Secondly, and conceivably, the jury may have determined that John Butticci was negligent and that Schindel was not, but that Schindel had not sufficiently established his damages. The usual instructions on burden of proof and damages were given. Schindel testified that he did not go to a doctor until five months after the accident, and never

lost a day's working time. The jury may well have concluded that Schindel did not prove his damages with the requisite certainty.

■ This court must, of course, indulge in every reasonable intendment in favor of the verdicts. If the verdicts have any reasonable foundation they cannot be set aside. (*Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274 [231 P.2d 816]; *Lowen* v. *Finnila,* 15 Cal.2d 502 [102 P.2d 520].) ■ Since there are at least two rational theories upon which the verdicts can be sustained as consistent, they must be upheld as against the charge that they are inconsistent.

It should also be noted that the record fails to show that the Butticcis objected to the form of the verdicts at the trial level. This may have constituted a waiver of the point. (*City of Los Angeles* v. *Frew,* 139 Cal.App.2d 859 [294 P.2d 1073]; *Murray* v. *Babb,* 30 Cal.App.2d 301 [86 P.2d 146]; *Mitchell* v. *Stringer,* 133 Cal.App. 207 [23 P.2d 765]; see generally 2 Witkin on California Procedure, § 97, p. 1825.)

The judgments appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.