[Civ. No. 23400. Second Dist., Div. Two. July 27, 1959.]

ANNA ROSE SHEPPARD, a Minor, etc., Appellant, v. CITY OF LOS ANGELES, Respondent.

Gray & Guy and Walter P. Christensen for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Joseph N. Owen, William E. Still and Weldon L. Weber, Deputy City Attorneys, for Respondent.

FOX, P. J.—Plaintiff seeks to recover damages for personal injuries caused by the negligent operation of the city's fire fighting equipment and alleged dangerous and defective condition of public property. A jury returned a verdict against her. She has appealed from the ensuing judgment.

In seeking a reversal plaintiff contends that the court prejudicially erred in instructing the jury on (1) assumption of risk, (2) "to look is to see," and (3) unavoidable accident.

At the time of the incidents here involved, the evening of January 15, 1956, plaintiff had resided at 3835 Lincoln High Place, in Los Angeles, for 17 years. This is a hilly area. The street curves considerably though it runs generally in an easterly and westerly direction. Plaintiff's home was on the north side of the street at the top of the hill. A series of steps lead from plaintiff's house down to the street, which is approximately 20 feet wide. There was a retaining wall some 6 to 8 feet in height on plaintiff's side of the street; on the other side was a low curb. There was no sidewalk. There was a drop off of several feet on the curb side of the street. There was no hand rail on the curb side. On the evening in question plaintiff observed that her next-door neighbor's house (to the west) was on fire. Being unable to reach the occupants by telephone, she reported the fire to the fire department. The first fire truck to arrive "parked in the street

in front of the garages below her home." Plaintiff then proceeded down her steps to the street with her daughter, Carol Ann, age 10, for the purpose of informing the firemen at the entrance to the premises on fire that someone was in the house. Upon reaching the street plaintiff observed that the fire truck had parked so close to the retaining wall in front of her property that she was unable to go between the truck and the wall. So, she and her daughter went in front of the truck and then, hand in hand, proceeded down the hill within a couple of feet of the curb on the right hand side of the parked fire truck. Plaintiff "was aware of her proximity to the edge of the street." As they were walking down the hill a second fire truck was coming up the hill. It had stopped at the bottom of the hill so that a line could be laid from the fire hydrant. As this fire truck came up the hill there were automobiles parked on the left against the retaining wall; the siren was in operation and "in addition to the regular headlights there were red lights, one on each side of the vehicle, which were burning, and there was one in the middle revolving."

As Carol Ann and plaintiff crossed the street to the side where the curbing was located Carol Ann saw the second fire truck coming around the corner at the bottom of the hill and told her mother that another truck was approaching. Plaintiff squeezed Carol Ann's hand, which indicated to her that her mother had heard what she had said. Carol Ann could hear the noise of the truck as it came up the hill and observed its bright lights. "She continued on down the hill behind her mother holding her hand."

Plaintiff testified that as she went down the hill "she had her eyes on the ground to watch the street where she was walking, and she was not looking out in front." She further testified that she neither saw nor heard the second truck before the accident, nor did she see any red lights or hear the siren. She did state, however, that "she noticed lights in the roadway coming towards her and that these lights were blinding"; that she "continued walking down the hill because it was closer for her to keep traveling in the direction that she was walking to get out of the street than to turn around and retrace her steps towards the top of the hill. . . ." She also testified that "the only noise she heard was a shout, 'Look out Lady,' just before the second fire truck came by her." "The voice seemed to come from the direction of the garages which were located in the retaining wall across the street."

Upon hearing this shout, ''she stopped and turned around to her left placing her back towards the middle of the street to see what and who was shouting. As she turned to look in the direction from which the voice came she felt a sharp nudge in the small of her back and she was forced over the wall and fell to the ground below sustaining personal injuries,'' for which she brought this suit. Carol Ann also fell from the wall receiving injuries for which the jury awarded her $500 damages. This latter phase of the case is not involved in this appeal.

█ It is the duty of the court, upon request, to instruct the jury on every theory of the case that finds support in the law and evidence, but it is error to instruct on a theory that does not have such support. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785] ; *Nelson* v. *Angel,* 124 Cal.App.2d 861, 866 [269 P.2d 626] ; 48 Cal.Jur.2d, § 188, pp. 216-217.) Applying these principles to the facts in the instant case, we are of the opinion that it was proper for the court to give the assumption of risk instruction. █ The elements of this defense are ''a person's knowledge and appreciation of the danger and his voluntary acceptance of the risk.'' (*Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 162 [265 P.2d 904].) █ Actual knowledge of the risk as distinguished from constructive notice thereof is required. ''But actual knowledge of the risk may be inferred from the circumstances.'' (*Gomes* v. *Byrne,* 51 Cal.2d 418, 421 [333 P.2d 754].)

█ In the instant case plaintiff, having lived at this location for 17 years, was obviously familiar with the narrowness of the street, the fact that there were no sidewalks, that there was a drop-off on the other side of the street, that there was no hand rail or other protection except for a low curb, and that the street leading up the hill to her home had curves in it. There was testimony that as the second fire truck proceeded up the hill, in addition to its normal headlights, three red lights (one on either side and one revolving in the middle) and the siren were in operation. Carol Ann heard the noise of this truck, observed it approaching them, and told her mother who squeezed her hand. Although plaintiff denied knowledge of the approaching truck she admitted seeing a vehicle with bright lights ''coming towards her.'' From the foregoing the jury could readily conclude that plaintiff actually knew a second fire truck was approaching. From this factual setting the jury could reasonably infer that plaintiff

knew that if she proceeded down the street she was likely to be hit or forced over the curb. With this knowledge she nevertheless continued to walk down the hill on the drop off side of the street. Under this evidence an instruction on assumption of risk was proper.

Plaintiff argues, however, that she did not voluntarily assume any risk for the reason that she was discharging a moral duty by her attempt to inform the firemen that someone was in the burning house. There is no question but that plaintiff could have conveyed this information to the firemen without walking next to an unprotected drop-off on a narrow street in the face of an approaching fire truck. She voluntarily selected this method.

It is next contended by plaintiff that the court erred in giving the ''to look is to see'' instruction. The giving of such instruction does not constitute error in view of the facts presented in the case at bar. (See *Shehtanian* v. *Kenny,* 156 Cal.App.2d 576, 579 [319 P.2d 699]; *MacLean* v. *City & County of San Francisco,* 151 Cal.App.2d 133, 141-142 [311 P.2d 158]; *Rubalcaba* v. *Sweeney,* 168 Cal.App.2d 1, 4-5 [335 P.2d 157].)

Finally, plaintiff argues that prejudicial error was committed by the giving of the unavoidable accident instruction. Generally, the giving of such instruction is error. (*Alarid* v. *Vanier,* 50 Cal.2d 617, 625 [327 P.2d 897]; *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 658-660 [320 P.2d 500, 65 A.L.R.2d 1]; *Amar* v. *Union Oil Company of California,* 166 Cal.App.2d 424, 429-430 [333 P.2d 449].) Granting that this instruction should not have been given in the instant case, we may not reverse the judgment on this ground unless the error was prejudicial. (Code Civ. Proc., § 475.) ''The determination whether, in a specific instance, the probable effect of the instruction [unavoidable accident] has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn.'' (*Butigan* v. *Yellow Cab Co., supra,* at pp. 660-661.) If the jury were confused by the instruction and received the impression that unavoidability was a distinct issue to be decided, that such was a separate defense, and based their judgment thereon rather than determining liability on the basis of negligence and proximate causation, it would be difficult to explain the verdict in favor of plaintiff's daughter. That is, if the jury

believed the accident was "unavoidable," and on that basis found against the plaintiff, since the accident was equally "unavoidable" with reference to the daughter, the verdict would necessarily have been against her also. The reasonable inference from a verdict for the daughter is that the jury was not misled by the erroneous instruction. ██ On appeal, we must indulge in every reasonable intendment in favor of the verdict. (*Butticci* v. *Schindel Furniture Co.*, 152 Cal.App.2d 165, 170 [313 P.2d 62].) ██ It does not appear that a different verdict would have been probable had the instruction not been given. There was evidence from which the jury could have properly concluded that plaintiff did not act reasonably with respect to her own safety. Also, the jury could have found that plaintiff assumed the risk. On the other hand, the evidence strongly suggests that the daughter neither voluntarily assumed the risk nor was guilty of contributory negligence since she merely followed her mother who was leading her by the hand. This would reasonably explain the verdict in her favor.

In *Martz* v. *Ruiz*, 158 Cal.App.2d 590 [322 P.2d 981], the unavoidable accident instruction was held prejudicial. There, a judgment was rendered against all plaintiffs, one of whom was a passenger, 14 years of age, in the back seat of the Martz automobile, against whom no contributory negligence was alleged. The verdict against him was "an indication that the jury was misled" (*Martz* v. *Ruiz, supra*, p. 592) by the unavoidable accident instruction. In contrast, however, the jury in the instant case found in favor of the child, thus indicating that it was not confused or misled. See also *Butigan* v. *Yellow Cab Co., supra*, where a verdict favorable to all defendants indicated that the jury was misled to the plaintiff's prejudice. Under all of the circumstances of this case, we do not believe plaintiff was denied a fair trial. (See *Halleck* v. *Brown*, 164 Cal.App.2d 586, 590 [330 P.2d 852].)

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.