[Civ. No. 24876.   Second Dist., Div. Three.   July 26, 1961.]

MacISAAC AND MENKE COMPANY (a Corporation), Respondent, v. C. L. FREEMAN, Appellant.

328

Holbrook, Tarr & O'Neill and Francis H. O'Neill for Appellant.

Flint & MacKay, Arch R. Tuthill, Roscoe C. Andrews and Robert E. Willard for Respondent.

FORD, J.—The defendant appeals from a judgment in the amount of $6,700 in favor of the plaintiff in an action to recover damages caused by the defendant's refusal to perform certain plumbing and steam-fitting work under a bid which he had submitted to the plaintiff.

In the early part of February 1958, the plaintiff, a licensed general contractor, was preparing a bid with respect to the construction of a structure designated as the Botany Building on the campus of the University of California at Los Angeles. Bids had to be submitted before 2 p. m. on February 7, 1958. J. D. McDonald, a construction estimator for the plaintiff, testified that the procedure ordinarily followed in such work was that selected subcontractors were asked to submit bids after an examination of the plans and specifications. Sheets M-1 to M-21, inclusive, of the plans for the Botany Building showed the complete mechanical requirements; there was no separation of plans for plumbing, heating, ventilating, air conditioning, domestic refrigeration and steam fitting. In the specifications, section CC related to domestic refrigeration, section DD was entitled "Plumbing and Steamfitting," while section EE bore the heading of "Heating, Ventilating and Cooling." About a week or 10 days before the closing date

of the bids, Mr. Anderson, an employee of the defendant, obtained from the plaintiff the mechanical plans (sheets M-1 to M-21, inclusive) and the specifications for section DD. On February 6, 1958, between 1:30 and 1:45 o'clock in the afternoon, Mr. McDonald received a telephone call from Mr. Hatfield, an employee of the defendant. Part of Mr. McDonald's testimony as to that conversation was as follows: "A. At that time he gave me—or first thing, he said was, 'I have got a bid on the Botany Building.' At that time I was in—was closing a job which was bidding within 20 minutes of the time he gave it to me, which was another job bidding on that Thursday. So, I told him I was in a hurry, make it quick. So, he told me he had a bid for the plumbing only; no heating, for the Botany Building, and gave me the figure of $144,300. . . . I believe his exact words, to the best of my knowledge, were 'Plumbing only. No heating.' . . . He gave me the figure. I believe I asked him something like, 'Is that everything?' [and] 'No questions?' And then I hung up. The conversation didn't last a minute. It was less than that since I was in a hurry and he realized what a bid closing is like. He kept it to a minimum and so did I. We didn't discuss the job."

The plaintiff was the successful bidder and entered into a contract with the Board of Regents of the University of California. In submitting its bid, it used the defendant's bid as being the lowest for the work described in section DD of the specifications. After the bid of the plaintiff had been accepted, Mr. McDonald talked to Mr. Hatfield and was informed by the latter that when he had said "no heating" he meant "no steam fitting." Mr. McDonald said to him: "Well, you said no heating. That meant no heating section. There is no question that steam fitting is in the Plumbing Section." On cross-examination, Mr. McDonald said that, while it was not common, sometimes a bid relates only to a part of a section of specifications. At a later date, Hatfield said that the steam-fitting portion of the work would cost an additional amount of $79,500. Thereafter, the plaintiff had the plumbing and steam fitting done for $151,000, which was $6,700 in excess of the defendant's bid of $144,300.[1]

C. L. Freeman, the defendant, testified that he was a plumbing and heating contractor. He said he had licenses

---

[1] At the trial it was stipulated that the plaintiff had taken every step which was possible to mitigate its damages and that, if the court should award damages to the plaintiff, the amount of $6,700 was proper.

from the State of California as follows: "What is commonly known as a C-36, which is plumbing license; a C-4, which is a steam fitting license." He further testified that "[p]lumbing takes in the drainage system of a building, water supply system and gas piping" whereas "heating in some instances covers steam fitting"; the State Department of Contractors puts piping for a steam-heating system under the steam fitting classification. In the construction industry, it is a common practice "to bid part of a specification or of a section of a contract." The common meaning of the phrase "plumbing only" is that it covers the drainage systems, the domestic water systems, and the gas piping; "heating" means the heating of areas within a building. Steam piping or steam fitting is normally classified by contractors in the Los Angeles area as being in the category of heating. Common practice is "to emphasize what you are bidding." When asked if there was a custom, when only a part of a classification is bid, to mention specifically what is not being bid, the defendant answered: "Yes, I would say so." The witness was away from Los Angeles when the bid in question was made.

Frank Hess, a plumbing and heating contractor who testified as an expert witness on behalf of the defendant, said that steam fitting normally encompassed "the assembly of piping, conducting steam to various units and the fittings . . . attached to the piping." He also testified to the practice within the construction industry as to the submission of bids by subcontractors to the general contractor. He stated that heating would include steam fitting. If a bid contains an exclusion, it is the common practice for the general contractor to ask what is meant thereby if any ambiguity has not been explained.

Roger E. Harrington, who was engaged in the plumbing, heating and air conditioning business, testified as an expert witness for the defendant. He stated that steam fitting or steam piping was normally classified as being in the category of heating, not of plumbing.

In rebuttal, the plaintiff called Richard J. Coe, who was in the plumbing and heating business, as an expert witness. Part of his testimony was as follows: "A. . . . You could say 'Plumbing only, no heating,' for the entire job, yes. Q. Well, you mean including—that would be excluding Section EE? A. Yes." He further said that in bidding on section DD, the customary method would be to use the words "steam fitting," rather than the word "heating," in stating an exclusion. On

cross-examination, he said that "steam fitting is probably more often called heating" than it is classified as being in the category of plumbing. If he were bidding on section DD and wanted to bid the plumbing only, he would say: "Plumbing only. No steam piping or no piping," because in his shop steam piping is classified as a form of piping. The witness further testified as follows: "Q. . . . Now, however, if you were receiving a bid from somebody on just DD; that is all that they had been handed and all they were bidding on in which they said, 'Plumbing only, no heating,' would you construe that as meaning that the steam piping was excluded? . . . THE WITNESS: Yes, I would say that I would have to."

Cecil P. Smith, who was in the plumbing business, testified in rebuttal on behalf of the plaintiff. In response to questions as to the "customary procedure" with respect to bidding as to a section such as section DD, he stated: "Well, customary procedure, the wording 'Plumbing only, no heating' wouldn't be customary either for this section or any other section without further explanation. . . . If you had bid Section DD and said specifically that you were bidding Section DD, "Plumbing only, no heating," it could refer to this section only. . . . Well, you keep saying two things here: one time you say 'Plumbing only, no heating,' and then the next thing they refer to Section DD, 'Plumbing only, no heating.' It's entirely two different things. . . . The statement, 'Plumbing only, no heating,' is a broad statement; it covers the whole book, perhaps, or we couldn't know what it covers." Later in the examination of the witness, the witness answered questions of the trial judge, as follows: "THE COURT: Then, the custom and usage in the industry under those circumstances if a bid is made bidding plumbing but no heating, what would that mean, if it means anything, under the custom and usage in the industry? THE WITNESS: Just as a statement of that, not referring to this would mean just what it says: Plumbing only but no heating of any type. . . . You have given me three words and said, 'Is there a custom and usage involved in those three words?' I can't particularly pin them down to a custom and usage. Not without some further statement."

Arthur F. Menke, president of the plaintiff corporation, testified as a rebuttal witness. Part of his testimony was that steam fitting does not encompass a whole heating system; in the instant case the steam fitting was ancillary to the heating system. He further stated in part: "The heating system is covered under . . . Section EE, and is largely duct work

which is done by sheet metal workers and includes items of equipment, like fitters and blowers and so on. The steam fitting . . . is under the plumbing section of the specification . . . it's done by pipe fitters and not by the type of people employed by the air conditioning or heating contractor. He employs sheet metal workers basically and it's a shop operation. . . . The plumber and steam fitting [sic] does the plumbing work and does the piping work which brings the heat to a point where the air passes over it and it picks up the heat and that is done by pipe fitters who are employed by . . . plumbing and pipe fitting contractors. We always call this process piping in our operation." With respect to the defendant's bid of $144,300, there was nothing to indicate that it was "out of line"; the next bid was (approximately) $153,000.

Among the findings of fact of the trial court were the following: 1. The defendant knew that section DD included plumbing and steam fitting and did not include heating which was "classified under Section EE." 2. "That plaintiff took and understood said telephone bid as a bid to do all the work and labor specified in Section DD of the Specifications, that is to say as a bid to do both the Plumbing and Steamfitting, and in reliance thereon did name and list defendant as its subcontractor for said work and did use the figures and sum provided to it by defendant in compiling and making its general bid for said job." 3. "That in so doing plaintiff did reasonably rely upon the said bid of defendant and did reasonably understand, construe and interpret the same . . . to be a bid on all work provided in Section DD of the Specifications. . . ." 4. "That defendant when he made his bid either knew or should reasonably have expected that plaintiff would understand, construe or interpret said bid as encompassing all of Section DD, including both Plumbing and Steamfitting, and that plaintiff would act reasonably in reliance on such understanding, construction, or interpretation of said bid as plaintiff subsequently did."

The respondent relies upon the doctrine of promissory estoppel. In support of its position it cites *Drennan* v. *Star Paving Co.*, 51 Cal.2d 409 [333 P.2d 757], a case involving the liability of a subcontractor under a bid. ▮▮▮ Therein the Supreme Court said, at pages 413-414: "Plaintiff contends, however, that he relied to his detriment on defendant's offer and that defendant must therefore answer in damages for its refusal to perform. Thus the question is squarely pre-

sented: Did plaintiff's reliance make defendant's offer irrevocable?

"Section 90 of the Restatement of Contracts states: 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' This rule applies in this state. [Citations.]

"Defendant's offer constituted a promise to perform on such conditions as were stated expressly or by implication therein or annexed thereto by operation of law. (See 1 Williston, Contracts [3d ed.], § 24A, p. 56, § 61, p. 196.) Defendant had reason to expect that if its bid proved the lowest it would be used by plaintiff. It induced 'action . . . of a definite and substantial character on the part of the promisee.' . . .

▮▮ Whether implied in fact or law, the subsidiary promise serves to preclude the injustice that would result if the offer could be revoked after the offeree had acted in detrimental reliance thereon. Reasonable reliance resulting in a foreseeable prejudicial change in position affords a compelling basis also for implying a subsidiary promise not to revoke an offer for a bilateral contract.

▮▮ "The absence of consideration is not fatal to the enforcement of such a promise. . . . The very purpose of section 90 [of the Restatement of Contracts] is to make a promise binding even though there was no consideration 'in the sense of something that is bargained for and given in exchange.' (See 1 Corbin, Contracts 634 et seq.) Reasonable reliance serves to hold the offeror in lieu of the consideration ordinarily required to make the offer binding."

Consideration of the reasoning of the *Drennan* case leads to the conclusion that the core of the problem presented on this appeal is whether there is substantial support in the evidence for the finding of fact that in making its bid for the construction of the building the plaintiff "did reasonably rely upon the said bid of defendant and did reasonably understand, construe and interpret the same . . . to be a bid for all work provided in Section DD of the Specifications."

▮▮ It is, of course, true that "the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence in the record to support the questioned finding," even though the appellate court might

334

believe that if it had been the trier of fact it would have arrived at a different conclusion. (*Chuck* v. *Alves,* 124 Cal. App.2d 144, at p. 146 [268 P.2d 94] ; see also *Henry* v. *Weinman,* 157 Cal.App.2d 360, 366-367 [321 P.2d 117] ; *Massow* v. *Gianaclis,* 120 Cal.App.2d 24, 27 [260 P.2d 655].)

The record has been carefully reviewed. It affords no substantial support for a finding that the plaintiff acted reasonably in assuming that the defendant was submitting a bid on all of the work included in specification DD and in relying on that assumption in submitting its bid for the construction of the building. Mr. McDonald, plaintiff's construction estimator, testified that a week or 10 days before the closing date of the bids, an employee of the defendant obtained from the plaintiff the mechanical plans and also the specifications for section DD. That section was entitled "Plumbing and Steamfitting." In orally submitting the defendant's bid, the language used was: "Plumbing only. No heating." Mr. McDonald was in a hurry and asked for no more definite statement of what that language was intended to include. He was aware that sometimes a bid related only to a part of a section of specifications. The defendant C. L. Freeman testified that steam fitting was normally classified by contractors in the Los Angeles area as being in the category of heating. Mr. Hess, testifying on behalf of the defendant, stated that heating would include steam fitting. Mr. Harrington, called as a witness by the defendant, said that steam fitting was normally classified as being in the category of heating, not plumbing. The plaintiff's witness Coe testified that in bidding on section DD, the customary method would be to use the term "steam fitting" rather than "heating" in stating an exclusion, but on cross-examination he said that steam fitting was probably more often called heating than it was classified as being in the category of plumbing. He further testified that if he were to receive a bid from someone who had been given only section DD, which bid was expressed as "Plumbing only, no heating," and such person was only bidding on section DD, he would have to construe that as meaning that the steam piping was excluded. Mr. Smith, a witness for the plaintiff, testified that "the wording 'Plumbing only, no heating' wouldn't be customary either for this section or any other section without further explanation." Mr. Menke, the president of the plaintiff corporation, stated that the steam fitting was ancillary to the heating system. It is thus clear that Mr. McDonald, the plaintiff's estimator, either

should have understood that the bid did not cover any work which fell under the general category of heating, as did steam fitting, or at least should have made further inquiry so that there would be no lack of clarity as to what was intended to be included in the bid. Consequently, such reliance as the plaintiff placed on the defendant's bid in submitting its own general bid was, as a matter of law, not reasonable. Hence, since the element of reasonable reliance discussed in *Drennan* v. *Star Paving Co., supra,* 51 Cal.2d 409, is lacking in the present case, the doctrine of promissory estoppel cannot be applied. (See also *Graddon* v. *Knight,* 138 Cal.App.2d 577, 583 [292 P.2d 632]; *cf. Robert Gordon, Inc.* v. *Ingersoll-Rand Co.,* 117 F.2d 654, 660.)

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied August 17, 1961, and respondent's petition for a hearing by the Supreme Court was denied September 20, 1961.